**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

JOHNNY L. GUYTON,

      Plaintiff-Appellant,

v.

OTTAWA TRUCK DIVISION,
KALMAR INDUSTRIES U.S.A.,
INC.,

      Defendant-Appellee.

No. 00-3028
(D. Kan.)
(D.Ct. No. 98-CV-2488-GTV)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA** Chief Circuit Judge, and **SEYMOUR** and **BRORBY**, Circuit
Judges.

_____

      Mr. Guyton appeals from the district court's grant of summary judgment in

favor of Ottawa Truck Division of Kalmar Industries U.S.A., Inc. ("Ottawa

Truck").  Mr. Guyton alleges Ottawa Truck racially discriminated against him in

violation of 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and 42 U.S.C. § 1981

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

("Section 1981"), and seeks damages pursuant to 42 U.S.C. § 1981a. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

BACKGROUND

In January 1998, Mr. Guyton began working for Ottawa Truck as a "contract drafter." He was the only African-American employee in Ottawa Truck's engineering department at that time. He obtained a temporary position "with ... the possibility of being hired later if [his] performance was okay." As a "contract drafter," his responsibilities included "mak[ing] changes and produc[ing] new drawings, as necessary, to facilitate [Ottawa Truck] building trucks that pulled trailers."

Drafters at Ottawa Truck used a computer aided design system loaded with drafting software entitled "Computer Vision." Mr. Guyton lacked experience with Computer Vision, but was familiar with computer aided design systems. Because of Mr. Guyton's inexperience with Computer Vision, Mr. Brown, a design engineer, trained him during his first week of work at Ottawa Truck.

On Mr. Guyton's fourth day of work, his supervisor, Mr. Lehman, assigned him a training exercise. He completed the assignment and submitted it to Mr.

Lehman, who testified in deposition that he viewed Mr. Guyton's drawing as technically unsatisfactory and untimely. Mr. Lehman never proffered his criticism to Mr. Guyton when he submitted his drawing; however, Mr. Guyton noticed Mr. Lehman appeared displeased with his performance.

Mr. Halverson, the Director of Engineering at Ottawa Truck, fired Mr. Guyton six days after he began working for the company. Before terminating him, Mr. Halverson spoke with Mr. Lehman and Mr. Brown about Mr. Guyton's drafting performance. Mr. Lehman told Mr. Halverson he was displeased with Mr. Guyton's submitted drawing and drafting abilities. Mr. Brown told Mr. Halverson "there were some basic mechanical things that [Mr. Guyton] didn't know how to draw."

According to Mr. Guyton, Mr. Halverson told him of his termination, expressed his regrets and explained, "we're going to have to let you go because we don't feel that we could bring you up to speed. We thought that your technical abilities were more than what they were, and we're going to let you go at this point." Mr. Guyton then retrieved his briefcase, and left the building.

Two or three weeks after his discharge, Mr. Guyton received a telephone

call from Mr. Vasquez, another temporary employee at Ottawa Truck. Mr. Vasquez explained he overheard Mr. King, who at the time was Chief Engineer at Ottawa Truck, remark "[w]e finally got rid of that nigger." Mr. Guyton was surprised Mr. Vasquez called him to report the racial slur because Mr. Guyton found the people he worked with at Ottawa Truck "very nice and very polite."

In October 1998, Mr. Guyton filed a complaint in district court alleging racial discrimination in violation of Title VII and Section 1981, and seeking damages pursuant to 42 U.S.C. § 1981a. After the parties filed cross-motions for summary judgment, the district court granted Ottawa Truck's motion and denied Mr. Guyton's motion. The district court held Mr. Guyton neither suffered disparate treatment nor experienced a racially hostile work environment, and was not entitled to punitive damages. Regarding Mr. Guyton's disparate treatment allegation, the district court concluded he failed to present sufficient evidence showing Ottawa Truck's reasons for terminating him were pretextual. On appeal, Mr. Guyton argues he proffered sufficient prima facie and pretext evidence to withstand summary judgment.[1]

---

[1] Mr. Guyton does not appeal, and we do not address, his hostile work environment claim. In addition, because we affirm the district court's summary judgment ruling in favor of Ottawa Truck, we need not discuss: (1) Mr. Guyton's request for damages under 42 U.S.C. § 1981a; and (2) Ottawa Truck's argument that an inference of nondiscrimination arises when the same person hires and fires the employee alleging

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). "Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). "[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

## DISCUSSION

Mr. Guyton relies on indirect evidence to support his claim of discriminatory discharge under Title VII and Section 1981.[2] The elements of an

discrimination. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute").

[2] As discussed below, Mr. Guyton claims that Ottawa Truck's reasons for terminating him are false, he was disparately treated, and its managers harbor racial animus. Although he describes this as only a disparate treatment case, it is more accurately characterized as alleging discriminatory discharge. Accordingly, we will not limit our review exclusively to his disparate treatment allegation.

employee's discriminatory discharge claim are the same whether brought under Title VII or Section 1981, and we analyze them using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225-26 (10th Cir. 2000). We are mindful that "[a]lthough the general rule that an employer can discharge an at-will employee for any reason or no reason is still valid, an employer can no longer terminate an at-will employment relationship for a racially discriminatory reason." *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000).

Pursuant to the *McDonnell Douglas* framework, the employee "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *Kendrick*, 220 F.3d at 1226 (quotation marks and citation omitted). Once the employee establishes a prima facie case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action." *Id.* (quotation marks and citation omitted). If the employer satisfies his burden of production, the employee must then show that the employer's justification is pretextual. *Id.* Accordingly, "[an employee's] prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer

-6-

unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 135 (2000).

*A. Prima Facie Case*

The district court assumed Mr. Guyton proved his prima facie case of discrimination. To establish a prima facie case, Mr. Guyton must show: "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *Kendrick*, 220 F.3d at 1229. Although both the parties and the district court identified an inaccurate prima facie standard, we find it appropriate to assume, for the purposes of this opinion, that Mr. Guyton established a prima facie case of discrimination and proceed directly to the second and third steps of the *McDonnell Douglas* analysis. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n. 11 (10th Cir. 1999) (recognizing it is appropriate for this court to focus on the pretext element of a discrimination lawsuit when the district court concentrated its analysis on that element).

*B. Legitimate, Non-Discriminatory Reason for Termination*

Having assumed Mr. Guyton established his prima facie case, the burden shifts to Ottawa Truck to provide a legitimate, non-discriminatory reason for

terminating him. Ottawa Truck's stated reasons for discharge are: (1) he was not technically proficient at drafting parts for the trucking industry; and (2) it would take too long to train him on the drafting software. Accordingly, we hold Ottawa Truck articulated legitimate, non-discriminatory reasons for firing Mr. Guyton.

*C. Pretext*

To satisfy his burden of showing pretext, Mr. Guyton offers two arguments. First, he claims *Reeves* obviates an employee's obligation to show pretext. In the alternative, Mr. Guyton argues he presented sufficient pretext evidence demonstrating: (1) Ottawa Truck's justifications are false – he is, in fact, proficient and requires only minimal additional training on the drafting software; (2) he was treated less favorably than a "similarly situated" white contract drafter;[3] and (3) Ottawa Truck's managers harbor racial animus.

Before examining his alternative argument, we briefly express our disagreement with Mr. Guyton's first assertion that *Reeves* eliminates the

---

[3] In the district court, Mr. Guyton argued he was treated less favorably than Mr. Vasquez, who, according to Mr. Guyton, was a similarly situated contract drafter. The district court held Ottawa Truck's decision not to terminate Mr. Vasquez failed to show pretext. Mr. Guyton does not challenge the district court's holding regarding Mr. Vasquez on appeal; thus, we deem this matter waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

employee's burden of showing pretext. In *Reeves*, the Supreme Court reiterates:

> [T]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]. And in attempting to satisfy this burden, the [employee] – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.

530 U.S. at 143 (quotation marks and citations omitted). It is evident *Reeves* rejects certain circuit courts' attempt to require an employee to introduce sufficient evidence to find both that the employer's reasons are false and that the real reason is discrimination. *Id.* at 2104-05, 2108-09 (rejecting pretext-plus standard). However, the case does not eliminate Mr. Guyton's obligation to establish his prima facie case and provide sufficient evidence to disbelieve Ottawa Truck's legitimate, non-discriminatory explanations for firing him. *Id.* at 2109 (holding "[an employee's] prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). Based on our reading of *Reeves*, we hold Mr. Guyton's first argument necessarily fails. Therefore, we focus our attention on his alternative argument and examine his evidence of pretext.

*1. False Justification for Termination*

In his alternative argument, Mr. Guyton claims he provided sufficient evidence showing Ottawa Truck's reasons are false. Mr. Guyton primarily argues his deposition testimony and affidavit, in which he claims he is proficient and able to draft without significant additional training, creates a genuine issue of material fact that Ottawa Truck's reasons are false. Additionally, he cites Mr. Vasquez's affidavit and deposition testimony as support for his contention he is in fact proficient and requires "very little training." We conclude Mr. Guyton's subjective evaluation of his own drafting aptitude and ability to work without substantial additional training, and Mr. Vasquez's similar perspective, do not create a material fact dispute, because the relevant inquiry is the decisionmaker's perception of the employee's performance. *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209 (10th Cir. 1999); *see also Bullington*, 186 F.3d at 1318.

As this court consistently recognizes, we must "look at the facts as they appear to the person making the decision to terminate [the employee]." *Kendrick*, 220 F.3d at 1231; *see also Shorter*, 188 F.3d at 1209 (recognizing "it is the manager's perception of the employee's performance that is relevant," and "not [the employee's] subjective evaluation of [his] own relative performance" in determining pretext) (quotation marks omitted). Thus, "[t]he relevant inquiry is

-10-

not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington*, 186 F.3d at 1318.

Mr. Halverson, the Director of Engineering, made the decision to fire Mr. Guyton because he believed Mr. Guyton lacked proficiency in drafting parts for the trucking industry and required substantial training on the drafting software. Mr. Halverson solicited comments and feedback from Mr. Brown and Mr. Lehman. According to Mr. Halverson, Mr. Brown told him that Mr. Guyton lacked the ability to draft "basic mechanical things." In addition, both parties agree Mr. Lehman, who was personally familiar with Mr. Guyton's drawings, complained to Mr. Halverson about the quality of Mr. Guyton's work and his lack of drafting proficiency. Accordingly, the fact that Mr. Halverson consulted with people familiar with Mr. Guyton's work and received negative commentary, suggests Mr. Halverson honestly believed his proffered reasons.

Mr. Guyton's alleged aptitude simply does not show that when Mr. Halverson decided to terminate him, Mr. Halverson did not honestly believe his proffered reasons. Similarly, even if we assume Mr. Vasquez's affidavit and

deposition testimony are admissible,[4] the evidence attesting to Mr. Guyton's proficiency is insufficient to create a genuine issue of material fact on the issue of pretext. Mr. Vasquez neither reviewed Mr. Guyton's drafting samples nor possessed decisionmaking or supervisory authority over Mr. Guyton; thus, Mr. Halverson did not ask for his opinion about Mr. Guyton's technical ability to draft parts for the trucking industry. This evidence suggests, at most, Ottawa Truck may have unwisely discharged Mr. Guyton, but it fails to show Mr. Halverson dishonestly fired him. *See Bullington*, 186 F.3d at 1318.

With this inquiry in mind, we examine Mr. Guyton's three ancillary arguments. He claims pretext is shown by: (1) his trainer, Mr. Brown, provided him with positive feedback on his drafting; (2) he drafted "actual production work," rather than training exercises, during his first week at Ottawa Truck; and (3) his mechanical drawings drafted while working for other employers. After reviewing the record, we conclude this evidence does not preclude summary judgment for Ottawa Truck because it, too, fails to establish Mr. Halverson did

---

[4] Mr. Vasquez's affidavit speaks to Mr. Guyton's drafting proficiency in general, conclusory terms. "While an affidavit is certainly an appropriate vehicle to establish a fact for summary judgment purposes, the affidavit must set forth facts, not conclusory statements." *Bancoklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (addressing the summary judgment requirement that "facts" be established by evidence that would be admissible at trial).

not honestly believe his stated reasons for terminating Mr. Guyton. We address each argument in turn.

First, Mr. Guyton's claim the trainer provided him with positive feedback fails to create a genuine issue of material fact that Mr. Halverson's reasons for firing him are pretextual. The record is replete with evidence the trainer was not "the person making the decision to terminate" Mr. Guyton. *See Kendrick*, 220 F.3d at 1231. According to the trainer, he did not recommend Mr. Guyton's termination, and was unaware of Mr. Halverson's decision to do so. In fact, he was attending another meeting when Mr. Halverson announced his decision. Thus, we must look at the facts as they appear to Mr. Halverson only, not the trainer. *Id.*

As noted above, Mr. Halverson did solicit the trainer's assessment of Mr. Guyton's drafting abilities. Unlike the alleged positive feedback he gave to Mr. Guyton, the trainer told Mr. Halverson "there were some basic mechanical things that [Mr. Guyton] didn't know how to draw." In other words, drawing all inferences in Mr. Guyton's favor, the trainer provided positive feedback to Mr. Guyton, but negative commentary to Mr. Halverson. However, the trainer's inconsistent feedback fails to cast doubt on Mr. Halverson's honest belief in his

-13-

reasons for firing Mr. Guyton because Mr. Halverson is "entitled to the assumption that those people he did consult were telling the truth." *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir. 1994) (acknowledging "[a]ny pretext determination is concerned with whether the employer honestly believes in the reasons it offers, not whether it made a bad decision.") (quotation marks and citation omitted).

We next examine Mr. Guyton's argument that he allegedly handled "production work," rather than mere training exercises, during his first week of work at Ottawa Truck. In essence, he suggests the trainer's decision to assign him production work demonstrates Ottawa Truck deemed him sufficiently proficient and capable of drafting parts for the trucking industry on its software without substantial additional training.

We disagree with Mr. Guyton's contention Mr. Halverson's reasons for terminating him are pretext simply because his trainer assigned him production work. As previously mentioned, the trainer was not the person who decided to terminate Mr. Guyton. Accordingly, the trainer's decision to assign Mr. Guyton production work does not cast doubt on Mr. Halverson's belief he lacked proficiency and required substantial training. Moreover, Mr. Guyton admits in his

-14-

deposition testimony the actual production drawings were drafted by someone other than himself, and his job was simply to make "minor changes" to these drawings. He never completed these minor changes because the computer network malfunctioned; therefore, his changes were never reviewed by a supervisor for "accuracy, content, completeness, clarity and [to] make sure that [the drawing] was what it was supposed to be." Thus, the trainer's decision to assign Mr. Guyton the task of drafting minor changes to pre-existing production drawings, which were never reviewed by a supervisor, fails to show Mr. Halverson did not honestly believe Mr. Guyton lacked drafting proficiency and required substantial training.

Finally, Mr. Guyton submits three mechanical drawings to prove Mr. Halverson's reasons are pretext, and that he is, in fact, a proficient drafter.[5] These drawings, too, fail to create a genuine issue of material fact that Mr. Halverson's reasons for terminating him are pretextual.

---

[5] At oral argument, Mr. Guyton's counsel suggested a mechanical drawing that his client allegedly produced while at Ottawa Truck recently surfaced and shows his technical proficiency. However, this is nothing more than a passing comment; the evidence was not before the district court, and is not before us now. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 n. 5 (10th Cir.) (recognizing that raising an issue for the first time at oral argument "comes too late."), *cert. denied*, 522 U.S. 1028 (1977).

The drawings lack probative value because Mr. Guyton's affidavit and attached resume reveal these drawings were created with the "Autocad" drafting software, not the Computer Vision drafting software required by Ottawa Truck. *See Vitkus*, 11 F.3d at 1539 ("Summary judgment may be granted if the evidence is merely colorable or is not significantly probative."). More importantly, it is apparent Mr. Guyton produced these documents for  employers not engaged in the trucking industry, who presumably have different standards for drafting proficiency than Ottawa Truck. A company must be allowed to judge for itself whether an employee is proficient on its own software and in its industry; this court is ill-suited to second guess such judgment based on three unrelated mechanical drawings. *See Kendrick*, 220 F.3d at 1233 (recognizing a court must not "act as a super personnel department that second guesses employers' business judgments") (quotation marks and citation omitted). "Different decisionmakers are entitled to be concerned about different things. Just as we will not dictate employment criteria to any company, we will not require separate decisionmakers for different, albeit related, companies to use the same criteria." *Chapman v. AI Transport,* 229 F.3d 1012, 1031 n.21 (11th Cir. 2000). Even viewing this evidence in the light most favorable to Mr. Guyton, it fails to undermine Mr. Halverson's beliefs about Mr. Guyton's drafting proficiency.

*2. Disparate Treatment*

Having concluded the deposition, affidavit, and drafting sample evidence fail to show Ottawa Truck's proffered explanations for terminating Mr. Guyton are false, we turn our attention to his claim he established pretext by presenting evidence that he was treated less favorably than a white contract drafter.

The district court did not discuss whether the white employee is similarly situated to Mr. Guyton. Pursuant to our de novo review, we conclude Mr. Guyton raised the issue of the white employee's differential treatment to the district court. In Mr. Guyton's response to Ottawa Truck's motion for summary judgment, he cites Mr. Vasquez's affidavit as evidence a white drafter was "similarly situated" to himself but treated differently. Mr. Vasquez's affidavit states, "[s]hortly after Mr. Guyton, was terminated, Ottawa Truck hired a Caucasian contract drafter with no prior experience on the Computer Vision software program. This Caucasian contract drafter was given much more training on this program than was Mr. Guyton. The people training him included the chief engineer, Harold King." According to Mr. Guyton, the white drafter received preferential treatment despite the fact that he "demonstrated no aptitude on the software program" and "required significant hands-on training." However, Mr. Guyton's assertion of disparate treatment does not create a genuine issue of material fact

-17-

because he fails to present evidence that the white drafter is similarly situated to himself.

An employee may "show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly situated, non-protected employees." *Kendrick*, 220 F.3d at 1232; *Gossett v. Oklahoma*, No. 98-5084, 2001 WL 355846, at *2 (10th Cir. Apr. 10, 2001) (acknowledging "[e]vidence sufficient to raise a fact issue on whether an [employer's] proffered explanation is pretextual may take a variety of forms, including evidence that the [employer] treated the plaintiff differently from others who were similarly situated, which we have held is especially relevant to a showing of pretext"). We recognize "[a]n employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Id.* (quotation marks and citation omitted). When determining whether Mr. Guyton is similarly situated to a comparable employee, we "should also compare the relevant employment circumstances, such as work history and company policy." *Id.* We are also mindful that "the failure of the plaintiff and affiant to share the same supervisor does not preclude the consideration" of evidence when "the plaintiff contends he is the victim of the discriminatory applicationn of a facility-wide [or company-

wide] policy and has other evidence of that policy." *Id.*, at *3.

Mr. Guyton presented absolutely no evidence to indicate he and the white drafter shared the same supervisor and trainers, and possessed comparable drafting skills and proficiency in the trucking industry. Nor has he alleged Ottawa Truck discriminated on the basis of race in applying a company-wide "policy," such as allowing a probationary period for contract drafters. *See id.*, at *3 (holding plaintiff alleged the school "routinely discriminated on the basis of gender in applying its school-wide policy of allowing failing students to receive incomplete grades and extra time to improve their performance"). Therefore, we hold Mr. Guyton failed to show the white contract drafter was "similarly situated"; the mere assertion of different treatment is insufficient to create a genuine issue of material fact on the issue of pretext.

*3. Circumstantial Evidence of Racial Animus*

Finally, we examine whether Mr. Guyton's additional circumstantial evidence of racial animosity establishes pretext. Mr. Guyton contends racial animus is demonstrable because "on the same day [Mr. Guyton] was terminated, [Mr. King,] the chief engineer said that 'We got rid of the nigger.' This sort of attitude and comment was consistent with management philosophy: [Mr.

Guyton's] supervisor and the Director of Engineering did nothing to stop, discourage or report racial discrimination in the Engineering Department." We disagree with Mr. Guyton's contention that this evidence is sufficient to suggest Ottawa Truck's reasons are pretextual.

"Language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once [an employee] has set out the prima facie case." *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321, 1323 (11th Cir. 1998); *see also Shorter,* 188 F.3d at 1209-10 (acknowledging derogatory comments may serve as circumstantial evidence of discrimination). After *Reeves*, we are mindful that these comments need not be made "in the direct context" of the employee's termination. 530 U.S. at 139. Moreover, *Reeves* recognizes the person harboring racial animus need not be the actual decisionmaker provided that the racially hostile individual is "principally responsible" for the employee's firing. 530 U.S. at 151; *see also Kendrick*, 220 F.3d at 1231 (recognizing other circuits' caselaw that an employer "may be held liable if the manager who discharged the [employee] merely acted as a rubber stamp, or the 'cat's paw,' for a subordinate employee's prejudice, even if the manager lacked discriminatory intent"). With these principles in mind, we examine Mr. Guyton's evidence of racial animus.

Although the district court did not have the benefit of *Reeves*, its opinion is not undermined by the Supreme Court's decision. *See* 530 U.S. at 151. The district court concluded "[t]here is no evidence ... that King had any input in [Mr. Guyton's] termination decision or that racial motivation for the decision existed ... [Mr. Guyton] has produced no evidence that King was involved at all in the decision to terminate [him]." We agree with the district court and address the issue in light of *Reeves*.

In this instance, Mr. Guyton's circumstantial evidence of racial animosity is insufficient to demonstrate pretext. Mr. Guyton merely attributes the racial slur to Mr. King, notes the timing of the remark, and points out Mr. King's job title as chief engineer at Ottawa Truck. Presumably, Mr. Guyton recognizes Mr. King did not actually fire Mr. Guyton, and instead is suggesting a person's job title alone is sufficient to establish the individual's influence in the workplace. Assuming this is Mr. Guyton's argument, he misses the point.

A non-decisionmaking employee's job title, without more, is insufficient to establish the individual is "principally responsible" for the employee's firing. *Cf. Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 221, 227-28 (5th Cir. 2000) (recognizing the Director of Operations, who did not have the authority to fire

-21-

plaintiff, acted as the "de facto decisionmaker" because he exerted great informal influence over the actual decisionmaker when (1) he provided her with an ultimatum that he would quit if she did not fire the plaintiff, and (2) his father was CEO of the parent corporation). In this case, there is no evidence to substantiate Mr. King was "principally responsible" for, or even involved with, the decision to fire Mr. Guyton, or that he exerted any influence over the official decisionmaker. *Cf.* Reeves, 530 U.S. at 151; *Russell*, 235 F.3d at 227-28. After thoroughly reviewing the record and construing the evidence and inferences in the light most favorable to Mr. Guyton, we hold Mr. King's racial slur, though clearly reprehensible, does not evidence pretext.

Having concluded Mr. King's racial epithet fails to show Ottawa Truck's reasons are pretextual, we now consider Mr. Guyton's contention that Mr. Halverson and Mr. Lehman's tolerance of other employee's racial slurs establishes pretext. Mr. Guyton cites to both men's deposition testimony, where they acknowledged that the word "nigger" had been used in the engineering department, but did not know how often or by whom the slur was spoken.

As we have already mentioned, the comments need not be made "in the direct context" of the employee's discharge. *Reeves*, 530 U.S. at 151 (quotation

-22-

marks omitted).  However, Mr. Guyton fails to establish any context for these remarks, and instead simply asserts these comments are typical of "management philosophy."  It is obvious from the record that these alleged remarks are unquantified, uttered by unknown employees, and occurred at some point in the unspecified past.  *See Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir. 1996) (holding that the discharged employees failed to show pretext when alleging numerous instances of disparate treatment and a hostile work environment in conclusory terms with no reference to names, times and occasions).  Therefore, we conclude this evidence suffers fatal shortcomings, and is insufficient to create a genuine issue of material fact on the issue of pretext. *See id.*

Accordingly, we hold Mr. Guyton failed to present sufficient evidence showing Ottawa Truck's reasons for terminating him are pretext.  We **AFFIRM** the district court's grant of summary judgment in favor of Ottawa Truck.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge