**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 10 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

MARTY GOSSETT,

     Plaintiff-Appellant,

v.

STATE OF OKLAHOMA ex rel.
BOARD OF REGENTS FOR LANGSTON
UNIVERSITY AND THE AGRICULTURAL
AND MECHANICAL COLLEGES,
ERNEST HOLLOWAY, President of
Langston University, CAROLYN
KORNEGAY, Dean of the School of
Nursing of Langston University,

     Defendants-Appellees.

No. 98-5084

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 97-CV-115-K)

---

N. Kay Bridger-Riley (Gregory W. Alberty, with her on the briefs), Bridger-Riley
& Associates, P.C., Tulsa, Oklahoma, appearing for Plaintiff-Appellant.

David W. Lee, Lee & Gooch, P.C. (Michael Scott Fern, Oklahoma State
University, Stillwater, Oklahoma, with him on the brief), appearing for
Defendants-Appellees.

---

Before **TACHA,** Chief Judge, **HOLLOWAY** and **SEYMOUR**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Marty Gossett brought this action under 42 U.S.C. § 1983 and 20 U.S.C. § 1681(a) (Title IX) against the Board of Regents of Langston University, and the University President and Dean of the University School of Nursing. Mr. Gossett alleged that his involuntary withdrawal from the University's nursing program was caused by gender discrimination that violated his right to equal protection, substantive and procedural due process, and Title IX. The district court granted defendants' motion for summary judgment, ruling that Mr. Gossett had failed to present sufficient evidence to raise a jury question on his claims. We reverse and remand for further proceedings.

**I**

We review the grant of summary judgment de novo, applying the same legal standard employed by the district court under Fed. R. Civ. P. 56(c). *See Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Id.* In making this assessment, the court must review all of the evidence in

the record and draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc*., 120 S. Ct. 2097, 2110 (2000). The court "may not make credibility determinations or weigh the evidence," and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

Viewed under these standards, the record reveals the following background facts. Mr. Gossett successfully completed his first semester in the Nursing School and enrolled as a second semester student in the Fall of 1994. He did well in all of his classes that semester except for a Process II course taught by nursing instructors Kathleen Clarke and Pamela DiVito-Thomas. When Mr. Gossett began experiencing difficulty in the Process II course, he sought help and counseling from the instructors. In response to defendants' motion for summary judgment, Mr. Gossett offered evidence, which the district court rejected and which we discuss in detail below, to support his allegation that the instructors discriminated against the male students in the class and that as a result he was not given the same help, counseling, and opportunities to improve his performance as provided to women nursing students. He ultimately received a D in the class, which under Nursing School policy required his dismissal from the nursing program. His administrative grade appeal was denied, and his numerous attempts to obtain readmission were also unsuccessful.

*A.    Title IX*

Mr. Gossett brought a claim for gender discrimination under Title IX, which provides that "[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (a).  Title IX thus prohibits gender discrimination against students enrolled in federally supported educational programs and has been construed to provide an implied cause of action to an aggrieved individual.  *See Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995).  Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims.  *See id.*; *see also Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 832 (10th Cir. 1993) (Title VII is "the most appropriate analogue when defining Title IX's substantive standards") (quoting *Mabry v. State Bd. of Community Colleges*, 813 F.2d 311, 316 n. 6 (10th Cir. 1987)).

In this case, the district court assessed Mr. Gossett's Title IX claim under the three-part framework established for Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1]  Under this familiar three-step inquiry, a

---

[1] Although defendants agree that Title VII standards apply to proper cases brought under Title IX, they appear to argue on appeal that Title IX does not
(continued...)

plaintiff must first establish a prima facie case. The district court held that Mr. Gossett had done so by demonstrating that he belonged to a protected class, that he was qualified for his position, and that he lost the position under circumstances giving rise to an inference of discrimination. Defendants do not challenge this ruling on appeal.

The creation of a prima facie case gives rise to the presumption that the challenged action was the result of unlawful discrimination. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558 (10th Cir. 1996) (quoting *St Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). In order to rebut this presumption, the defendant bears the burden of articulating a facially nondiscriminatory reason for the adverse action. *See Reeves*, 120 S. Ct. at 2106; *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 327 (10th Cir. 1996). Defendants justified their decision to require Mr. Gossett to withdraw by relying upon the D grade he received in the Practice II course taught by instructors Clarke and DeVito-Thomas, pointing to the Nursing School's policy requiring a student to withdraw upon receipt of a grade

---

[1](...continued)
provide a private cause of action to a student like Mr. Gossett who alleges that his involuntary withdrawal from an academic program was caused by gender discrimination. Defendants did not make this argument to the district court in their brief in support of summary judgment. Even if we were to consider this issue for the first time on appeal, we have found no argument or authority to support the notion that Title IX, which bars sexual discrimination in any federally assisted education program, does not apply when a student alleges he was forced to withdraw from a program due to gender discrimination.

of D in any class.  We agree with the district court that this explanation satisfied defendants' burden of production, and that the burden therefore shifted to Mr. Gossett to establish "'that the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination.'" *Reeves*, 120 S. Ct. at 2106 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

A plaintiff demonstrates pretext either by showing that a discriminatory reason more likely motivated the defendant's decision or that the employer's proffered explanation is unworthy of belief.  *See Marx*, 76 F.3d at 327-28. Evidence sufficient to raise a fact issue on whether a defendant's proffered explanation is pretextual may take a variety of forms, including evidence that the defendant treated the plaintiff differently from others who were similarly situated, which we have held is especially relevant to a showing of pretext.  *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n.6, 1198-99 (10th Cir. 2000).  Although Mr. Gossett attempted to make such a showing below, the district court rejected his evidence upon concluding either that it was not based on personal knowledge or that it simply fell short of demonstrating pretext.

We review evidentiary rulings at the summary judgment stage for an abuse of discretion.  *See In re Durability Inc.*, 212 F.3d 551, 555 (10th Cir. 2000).  Our review of the summary judgment record in light of the applicable law convinces

us that, as discussed below, the district court abused its discretion by refusing to consider at least two items of evidence that in our view preclude the grant of summary judgment for defendants.

Mr. Gossett argued in opposition to defendants' motion for summary judgment that the Nursing School had a policy of allowing instructors to give failing students a grade of "Incomplete" and providing those students extra time in which to improve their grades, and that the School applied this policy in a sexually discriminatory manner. In support of his contention, he offered undisputed evidence that the class in which he received a D was made up of twenty-four students, five of whom were men. Three of the five men failed the course, while all of the women passed. *See* App. at 200. In addition, Mr. Gossett presented the affidavit of Anita Leforce, a female nursing student enrolled during the Fall 1994 semester in a Practicum I class. She stated that at the end of the semester she was informed by her instructor that she had not successfully completed the class and would be given a D on her transcript. Ms. Leforce, however, was given the opportunity to complete seven additional weeks of work in the course, and received a C rather that a D. The district court held the probative value of this affidavit negligible because Ms. Leforce was enrolled in a different course taught by a different instructor. We disagree.

It is true that in the context of allegations of discriminatory discipline, this court has looked to whether the plaintiff and others with whom he seeks to compare himself worked under the same supervisor. *See, e.g., Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404, (10th Cir. 1007). When, as here, the plaintiff contends he is the victim of the discriminatory application of a facility-wide policy and has other evidence of that policy, however, we have specifically held that the failure of the plaintiff and affiant to share the same supervisor does not preclude the consideration of that evidence of disparate treatment. *See Horizon/CMS Healthcare*, 220 F.3d at 1198 n.10 ("Defendant, however, has not demonstrated how the 'same supervisor' test is legally relevant to the inquiry of whether [plaintiff has] been the victim[] of an allegedly discriminatory *company-wide* policy. Thus, the fact that [plaintiff] and the affiants did not share the same supervisor does not preclude consideration of [affiants'] evidence.") We believe this holding is equally applicable to Mr. Gossett's allegation that the Nursing School routinely discriminated on the basis of gender in applying its school-wide policy of allowing failing students to receive incomplete grades and extra time to improve their performance.

Mr. Gossett also presented the affidavit of Deborah Guy, who taught a variety of classes at the Nursing School from 1993 to 1997 and served as a member of the Admissions Committee. Her affidavit, which is set out in its

entirety in the margin,[2] described a pattern of discrimination at the school

[2]

1. I taught a variety of classes at the Langston University School of Nursing from 1993 to January 1997 at the Langston campus, and served as a member of the Admissions Committee.

2. While employed for the University I witnessed routine mistreatment of the male nursing students at the Langston University School of Nursing by the University faculty and Dr. Carolyn Kornegay, the Dean and Director of the School of Nursing.

3. The female faculty is very hard on the male students in the Nursing program, and while I was employed at the Langston University School of Nursing, I witnessed only four male students graduate from the program.

4. I have personal knowledge that Marty Gossett was ridiculed, belittled, and mocked by the female faculty at Langston University School of Nursing, during numerous faculty meetings I attended.

5. I have personal knowledge that Kathy Clark, Marty's instructor in Process II, verbalized on numerous occasions, in many different ways, that she did not like Marty Gossett.

6. Dr. Carolyn Kornegay's treatment of male students at the Langston University School of Nursing could best be described as tyrannical and discriminatory.

7. Dr. Carolyn Kornegay acts as if she is untouchable in her position, and maintains "delusions of grandeur"; and because of her reputation it has been very difficult to find qualified faculty for the Nursing School.

8. Dr. Carolyn Kornegay's position as Dean of the Langston University School of Nursing, combined with her openly discriminatory behavior toward male nursing students appears to affect the way her faculty and employees treat the male students as well, i.e., it causes a "trickle down" of the disparate and unequal treatment of males, beginning with Dr. Carolyn Kornegay and continuing with most of her faculty, and condoned by Dr. Kornegay when it occurs.

9. I have personal knowledge that "incomplete" grades were given to students for courses that they were failing at the time. These students were allowed to remediate these grades in some form. Decisions as to which students received these incompletes were

(continued...)

arbitrary and capricious in nature.

10. I have personal knowledge of nine students that were given special favors and consideration in Nursing Process II at the Langston University School of Nursing. These students were given "Incompletes" for Process II while they were contemporaneously failing the course, providing them with the opportunity to remediated Process II, and advance to their third level without completing their second level. Process II was the course in which Marty Gossett was unsuccessful, preventing him from advancing to his third level. Marty Gossett was denied this opportunity to receive an "Incomplete."

11. I have personal knowledge that the female faculty involved in the readmission process at the Langston University School of Nursing did not want Marty Gossett to be readmitted to the Nursing Program, and took both affirmative and passive steps to ensure that Marty was not allowed back in the school, even though he had a solid academic record and was qualified as a student.

12. I have personal knowledge that the faculty knew exactly who the students were that they were evaluating for readmission, and that there is no anonymity to the readmission process.

13. Certain members of the faculty at both the Langston and Tulsa campuses are known to be "male-bashers," and I believe Marty encountered some of these professors.

14. I feel that there is a definite pattern of discrimination toward male nursing students at Langston University School of Nursing, based on their gender, and I have witnessed specific instances and accounts of this abuse and discriminatory treatment.

15. It is my opinion that Marty Gossett was discriminated against based upon his gender, and that he was mistreated inside and outside of the classroom at the Tulsa campus of the Langston University School of Nursing. It is also my opinion that this discriminatory treatment was the cause of Marty's lack of success in his Process II course, and also the reason he was purposefully excluded from readmission the Langston University School of Nursing.

(continued...)

directed at male students in general and Mr. Gossett in particular. In her affidavit Ms. Guy offers her opinion, based on her observations and experiences while teaching at the Nursing School, that Mr. Gossett's involuntary withdrawal from the nursing program, and the denial of his readmission, was the result of school-wide gender discrimination.

The district court rejected Ms. Guy's affidavit, concluding it failed to establish that her observations and opinions were based on personal knowledge. Again we disagree. Under Fed. R. Evid. 701, the testimony of a lay witness "in the form of opinions or inferences" is admissible if those opinions or inferences "are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Courts generally hold admissible under Rule 701 evidence in the form of lay opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices. *See, e.g., Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466-67 (5th Cir. 1989) ("Courts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the

---

[2](...continued)
App., vol. I at pp. 411-13 (emphasis added).

underlying circumstances.") (citing cases); *cf. United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir. 1985) ("[C]ourts have been very liberal in admitting witnesses' testimony as to another's state of mind if the witness has had a sufficient opportunity to observe the accused so as to draw a rational conclusion about the intent of the accused."); *United States v. Freeman*, 514 F.2d 1184, 1191 (10th Cir. 1975) (lay opinion testimony of employee admitted as "a shorthand rendition of his knowledge of the total situation and the collective facts").

Such opinion testimony was allowed in *Hansard* on the issue of age discrimination even though the witness had no firsthand knowledge of the termination at issue because the testimony was based on the witness' own experience as an employee with the defendant company and his familiarity with its hiring policy. *See id.* at 1465. In *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir. 1997), a long-time employee of the defendant was permitted to testify that he believed age discrimination had been involved in the plaintiff's termination despite the defendant's objection that the testimony was not based on personal knowledge. In holding the testimony admissible, the court pointed out that the witness was "in a position to have acquired personal knowledge of the facts that formed the basis of his opinion," and "had established a solid foundation of his intimate involvement with [defendant's] operation and his opinion was thus based on observations about [defendant's] decisionmaking

process." *Id.* at 911-12. Similarly, in *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 548 (5th Cir. 1996), an employee of the defendant in an age discrimination suit was allowed to state his opinion that the defendant was deliberately phasing out older workers. *Id.* at 548. Finally, in *Samples v. City of Atlanta*, 846 F.2d 1328 (11th Cir. 1988), in ruling on a summary judgment motion, the district court determined that an affidavit by a longtime employee of the defendant giving an opinion on the defendant's policies and practices was baseless and conclusory and refused to consider it. The appellate court reversed, holding that in view of the affiant's length of employment, his opinion was based on his personal observations and was therefore admissible under Rule 701. *See id.* at 1333-34.[3]

In the present case, Ms. Guy's affidavit demonstrates that her position as an instructor in the Nursing School and on the Admissions Committee provided her

---

[3] In support of their argument that the district court correctly refused to consider the affidavits discussed above, defendants cite several cases holding that statements cannot be considered for summary judgment purposes unless they are based on personal knowledge. Most of these cases are readily distinguishable because they do not address the admissibility of lay opinion testimony under Fed. R. Evid. 701. The few cases that do may be distinguished on the ground that the lay opinions offered in those cases were not accompanied by the requisite showing that the witness was in a position to obtain personal knowledge or firsthand observation of the matters upon which the proffered opinion was based. *See Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 347 (1st Cir. 1995) (opinion based on observation of ambiguous incident lacked "sufficient factual undergirding" to be probative of discriminatory intent); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1544 (10th Cir. 1995) (lay opinion not admissible when not based on personal knowledge).

-13-

with the opportunity to observe firsthand for several years the School's policies and practices with respect to its treatment of male students. Her opinion was a means of conveying her impression based on what she had herself perceived, and it was predicated upon concrete facts within her own observation and recollection. Consequently, her affidavit was admissible under Rule 701, and the district court abused its discretion in refusing to consider it.[4]

Upon consideration of the affidavits of Ms. Leforce and Ms. Guy, and the other evidence discussed above, we conclude that summary judgment for defendants on the Title IX claim must be reversed and remanded for further proceedings.

## B. Section 1983

Mr. Gossett also brought a claim under section 1983 asserting that the alleged gender discrimination denied him his constitutional right to equal protection. Our holding that he has created a fact issue on gender discrimination under Title IX requires that we reverse the grant of summary judgment on his section 1983 claim as well. Given the viability of the section 1983 claim, which

---

[4] Mr. Gossett offered other material in opposition to defendants' motion for summary judgment. Because we conclude that the items of evidence discussed above are a sufficient ground for reversing the grant of summary judgment for defendants on the Title IX claim, we do not address the district court's refusal to consider the other material. We note, however, that if this material is again offered by Mr. Gossett in further proceedings, the district court may wish to reassess its admissibility in light of this opinion.

can proceed against defendants individually, we need not consider defendants'

argument that the Title IX suit cannot proceed against the individual defendants.

Defendants also contend that the individual defendants are entitled to

qualified immunity. Although the parties addressed the issue in the summary

judgment proceedings below, the district court did not rule on the matter *per se*,

concluding instead that Mr. Gossett had not prevailed on the merits of his claims.

On appeal, appellees rely on the district court's ruling and argue the qualified

immunity issue on the merits. In view of our decision that fact disputes on the

merits in this case require a remand for further proceedings, we remand the

qualified immunity issue for further proceedings as well.[5]

## C.    *Procedural and Substantive Due Process*

Mr. Gossett claimed that he was deprived of his right to both procedural

and substantive due process in connection with his involuntary dismissal from the

Nursing School. The district court granted summary judgment to defendants on

these claims, holding that Mr. Gossett received prior notice of the possibility of

dismissal, and that the decision to require his withdrawal was careful and

deliberate, not arbitrary and capricious. As discussed below, we are persuaded

---

[5] A defendant who has lost his right not to stand trial "can 'reassert [his] qualified immunity claims at and after trial when the factual disputes have been resolved.'" *Guffey v. Wyatt*, 18 F.3d 869, 873 (10th Cir. 1994) (quoting *Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991)).

the record contains a factual dispute as to whether the decision was in fact based on gender discrimination rather than a careful evaluation of Mr. Gossett's academic performance.

As an initial matter, we note that Mr. Gossett had a property interest in his place in the Nursing School program that is entitled to due process protection under the Constitution. *See Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986). We are mindful of the Supreme Court's admonition that "the decision whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking," *Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978), and that "when judges are asked to review the substance of a genuinely academic decision, . . . they should show great respect for the faculty's professional judgment," *Regents of the Univ of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). As the Court indicated in *Ewing*, however, the notion of judicial deference to academic decisions loses force when, as here, the decisionmaker is "accused of concealing nonacademic or constitutionally impermissible reasons" for its action. *Id.*

We turn first to Mr. Gossett's claim that the manner in which he was required to involuntarily withdraw from the nursing program denied him procedural due process. When a school makes an ostensibly academic judgment

-16-

about a student, the procedural requirements of the Due Process Clause are satisfied if the student is given prior notice of the deficiencies in his academic performance and if the challenged decision is "careful and deliberate." *Horowitz*, 435 U.S. at 85; *see also Trotter v. Regents of Univ. of N. Mex.*, 219 F.3d 1179, 1184-85 (10th Cir. 2000). The district court concluded that the procedural requirements for an academic decision were met here. We conclude to the contrary, however, that Mr. Gossett has raised a fact issue as to whether the decision to require his withdrawal was the result of impermissible gender discrimination rather than a careful and deliberate evaluation of his academic ability.[6] Accordingly, we reverse and remand Mr. Gossett's procedural due process claim for further proceedings.

Under Supreme Court authority, a plaintiff asserting a substantive due process claim based on an academic decision must show that the decision was the product of arbitrary state action rather than a conscientious, careful and deliberate exercise of professional judgment. *See Ewing*, 474 U.S. at 224-25; *Harris*, 798 F.2d at 424. A plaintiff may make such a showing by evidence that the challenged decision was based on "nonacademic or constitutionally impermissible reasons," rather than the product of conscientious and careful deliberation.

---

[6] It is undisputed that Mr. Gossett received constitutionally adequate notice that his performance was not satisfactory.

*Ewing*, 474 U.S. at 225; *Harris*, 798 F.2d at 424. Mr. Gossett presented evidence sufficient to create a fact issue on whether the decision to require his withdrawal from the nursing program was motivated by impermissible gender discrimination rather than based on an exercise of professional judgment as to his academic ability. Accordingly, summary judgment was not proper on his substantive due process claim.[7]

The judgment of the district court is **REVERSED** and **REMANDED** for further proceedings in light of this opinion.

---

[7] The district court did not address Mr. Gossett's claim that illegal discrimination played a role in his unsuccessful grade contest proceedings and in his failure to be readmitted. Given our holding reversing and remanding Mr. Gossett's claim based on the D grade he received, which in turn necessitated his grade contest and his requests for readmission, we do not specifically address these claims. The parties are free to pursue them further on remand.