**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 25 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBBI A. ADKINS,

　　　　Plaintiff - Appellant,

　　v.

UNITED FOOD & COMMERCIAL
WORKERS INTERNATIONAL
UNION, LOCAL 7,

　　　　Defendant - Appellee.

No. 00-1353
(D. Ct. No. 99-M-1020)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **CUDAHY**,[†] Circuit Judges.

Plaintiff appeals the district court's order of summary judgment. We

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I. Background**

Appellant Robbi Adkins was hired in 1994 as a union representative by the

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[†]Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

United Food & Commercial Workers Local 7 ("Local 7"). Ms. Adkins's job responsibilities as a union representative included assisting employees represented by Local 7 who work for various employers concerning such matters as work environment, pay, scheduling, disciplinary issues, and workers' compensation. Many of these matters are addressed in collective bargaining agreements between Local 7 and the various employers.

Union representatives for Local 7 are required to be familiar with the details of the grievance process set forth in the applicable labor agreement. Representatives must ensure that grievances are properly and timely processed through the various contractual and internal union steps in order to make a timely demand for arbitration. If a grievance is not timely processed, or if a timely demand for arbitration is not made, the grievance is forfeited under the terms of the applicable labor agreement. Union representatives for Local 7 are also required to document events properly and maintain records to perform effectively their duties.

Under the collective bargaining agreement between Local 7 and the major grocery chains in Colorado ("grocer agreements"), including Safeway and King Soopers, representatives of Local 7 must demand arbitration within thirty days of the Step 2 meeting. Before Local 7 will demand arbitration of an employee's grievance, Local 7's Executive Grievance Committee ("EGC") must vote on

whether to pursue arbitration. In order to ensure compliance with the time limits for demanding arbitration under the grocer agreements, Local 7 requires that union representatives present the grievances for which they are responsible to the EGC within thirty days of the Step 2 grievance.

In October and November of 1996, Ms. Adkins failed to process sixteen grievances of King Soopers' employees in a timely fashion through the appropriate internal Local 7 procedures and failed to make timely demands for arbitration under the grocer agreement. A Step 2 meeting with King Soopers' representatives was held on October 15, 1996. According to the grocer agreement, a demand for arbitration had to be made no later than November 14, 1996. Ms. Adkins failed to present the grievances to the EGC until November 15, 1996. Consequently, Local 7 could not make a timely demand for arbitration.

On July 2, 1997, after an investigation, Local 7 imposed a two-week disciplinary suspension on Ms. Adkins for poor job performance, including Ms. Adkins's failure to process the sixteen grievances in a timely fashion, and failure to comply with internal union deadlines regarding such matters as expense reporting and monthly recaps.

The United Local Seven Staff Union ("ULSSU") is a labor organization representing certain classifications of Local 7 employees including union representatives. Ms. Adkins's employment by Local 7 as a union representative

was governed by a collective bargaining agreement between Local 7 and ULSSU ("Staff CBA"). When disciplinary action is threatened or taken against a ULSSU member, the member may obtain representation through ULSSU. Ms. Adkins asked Dan Ryan, president of ULSSU, to represent her during the disciplinary process related to her suspension.

Mr. Ryan requested from Local 7 any information regarding the discipline of other union representatives for untimely grievance processing. Local 7 provided no information to Mr. Ryan as a result of that request. Ms. Adkins did not file a grievance concerning her suspension at that time.

On December 8, 1997, Mr. Ryan attended a Local 7 Executive Board meeting. During this meeting, Mr. Ryan learned that another union representative might have untimely processed a grievance and not been disciplined. Upon receiving this information, Mr. Ryan informed Ms. Adkins of the possibility that another union representative may have been treated more favorably. On December 15, 1997, Mr. Ryan filed a grievance on Ms. Adkins's behalf, alleging disparate treatment in connection with Ms. Adkins's two-week suspension in July, 1997.[1]

Mr. Ryan held a Step 1 meeting with a representative of Local 7 on

---

[1]The parties dispute whether Ms. Adkins authorized Mr. Ryan to file this grievance in her behalf. Mr. Ryan testified in his deposition that she authorized him to file the grievance. Ms. Adkins denies authorizing a grievance at any time.

December 17, 1997. Local 7 denied the grievance at that time. Mr. Ryan held further discussions with Local 7's president, who also denied the grievance because of Ms. Adkins's numerous untimely processed grievances. Mr. Ryan had no other evidence at that time that any other union representative had a similar number of untimely processed grievances as did Ms. Adkins. Mr. Ryan subsequently withdrew the grievance.[2]

On July 26, 1996, prior to her suspension, Ms. Adkins filed a grievance on behalf of a discharged Safeway employee named Marina Gallagher. The Gallagher grievance was not one of the sixteen untimely grievances for which Ms. Adkins was suspended. Ms. Adkins presented this grievance to the EGC on January 17, 1997. The EGC decided the grievance had merit and voted to demand arbitration. However, Safeway notified Local 7 that it considered the Gallagher grievance untimely.

On August 11, 1997, over one month after Ms. Adkins's suspension, an arbitration hearing was conducted regarding the timeliness of the Gallagher grievance. On three occasions prior to this arbitration hearing, Local 7's in-house counsel requested from Ms. Adkins documentation related to the processing of the Gallagher grievance. Ms. Adkins provided no documentation

---

[2]The parties also dispute whether Ms. Adkins authorized Mr. Ryan to withdraw this grievance. Mr. Ryan testified that she did. Ms. Adkins completely disavows any knowledge of the grievance.

in response to these requests. On April 8, 1998, the arbitrator dismissed the Gallagher grievance as untimely.

After the arbitrator rendered his decision, Local 7 continued to question Ms. Adkins about her documentation relating to the Gallagher grievance. On April 21, 1998, and again on May 6, 1998, Local 7 officials met with Ms. Adkins. The Local 7 officials expressed their concerns regarding Ms. Adkins's handling of the grievance and her failure to provide documentation prior to the arbitration hearing. Following the May 6 meeting, Ms. Adkins provided Local 7 with day-timer pages that purported to show a meeting on January 14, 1997. Although Ms. Adkins had asserted that a Step 2 meeting occurred on that day, the day-timer pages contained only a handwritten notation of a Step 1 meeting and provided no time or details.

While campaigning for office, the president of Local 7 also had occasion to visit the stores to which Ms. Adkins was assigned as union representative. While visiting these stores, he was approached numerous times by individuals complaining of Ms. Adkins's failure to visit their stores and respond to their concerns. Other Local 7 officials also reviewed a number of complaints received by Local 7 between February and April 1998, alleging that Ms. Adkins was not visiting stores for a sufficient amount of time to meet with union members, missing meetings, and not communicating with union members about employment

issues.

After investigating Ms. Adkins's processing of the Gallagher grievance, the complaints from union members, and Ms. Adkins's overall employment history, including her earlier suspension, Local 7 decided to terminate her employment. On May 11, 1998, Local 7 provided written notice to Ms. Adkins of her termination, stating that the basis for her termination was overall poor job performance, the handling of the Gallagher grievance including failing to provide related documentation, and complaints from union members.

Article 20, Section 1 of the Staff CBA provides that an employee's employment may be terminated for just cause. Article 21, Section 1 sets forth a mandatory dispute resolution procedure. Section 2 of Article 21 provides:

> In cases involving termination or indefinite suspension, the grievant shall have the choice of either Arbitration or Appeal to the Executive Board and Membership of Local 7, as per the UFCW Local 7 Bylaws; provided, however, only employees who . . . have not successfully (i.e. won) availed themselves of the Grievance or Arbitration procedures for related disciplinary matters shall have the right to Appeal to the Executive Board or Membership.

Following her termination, Ms. Adkins sought to appeal her termination to the Local 7 Executive Board instead of arbitration. Local 7 refused to allow Ms. Adkins to appeal to the Executive Board because the Staff CBA, as interpreted and applied by both Local 7 and ULSSU, does not permit an employee to appeal a termination based on progressive discipline where that employee has pursued a

grievance concerning a related disciplinary action and not won that grievance. Local 7 concluded that Ms. Adkins's earlier grievance was related to her termination and denied her appeal to the Executive Board.

Ms. Adkins's former position was filled by Fernando Rodriguez. At the time of her termination, Ms. Adkins was over forty years of age. When he was hired, Mr. Rodriguez was in his thirties.

Ms. Adkins filed a Charge of Discrimination with the EEOC. Pursuant to a work-sharing agreement between the EEOC and the Colorado Civil Rights Division ("CCRD"), her charges of sex and age discrimination were investigated by the CCRD in July of 1998. In January 1999, the CCRD issued its determination dismissing Ms. Adkins's Charge of Discrimination, finding no cause to believe that discrimination occurred.

Ms. Adkins filed suit in state court, alleging discrimination in violation of the ADEA, 29 U.S.C. §§ 621-634, Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-301 et seq., as well as breach of the Staff CBA. Local 7 removed this action to federal court. Although the district court found that Ms. Adkins had stated a prima facie case for sex and age discrimination, it found that Ms. Adkins had failed to raise a genuine issue of material fact regarding whether Local 7's proffered legitimate business reason for Ms. Adkins's termination was pretext for discrimination. The

district court also found that Ms. Adkins had failed to exhaust union grievance procedures related to her breach of collective bargaining agreement claim. Consequently, the district court granted summary judgment in favor of Local 7.

## II. Discussion

We review the district court's grant of summary judgment de novo. Bullington v. United Air Lines, Inc. 186 F.3d 1301, 1313 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A. Discrimination Claims

Ms. Adkins's claims under the ADEA, Title VII, and Colorado Anti-Discrimination Act are analyzed under the same three-part framework established for employment discrimination claims. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973) (Title VII); Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1165 (10th Cir. 2000) (ADEA); Bodaghi v. Dep't of Natural Res., 995 P.2d 288, 297 (Colo. 2000) (adopting the McDonnell Douglas framework for

analyzing claims under the Colorado Anti-Discrimination Act).[3]

Under this three-step inquiry, a plaintiff must first establish a prima facie case of discrimination. Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1176 (10th Cir. 2001); accord Bodaghi, 995 P.2d at 297. If the plaintiff succeeds in establishing a prima facie case, "the defendant bears the burden of articulating a facially nondiscriminatory reason for the adverse action." Gossett, 245 F.3d at 1176; accord Bodaghi, 995 P.2d at 297-98. The Supreme Court recently reiterated that "[t]his burden is one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); accord Bodaghi, 995 P.2d at 297-98. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves, 530 U.S. at 143 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)); accord Bodaghi, 995 P.2d at 298. Once the defendant articulates a facially nondiscriminatory reason for its adverse action, the burden shifts back to the plaintiff to establish "that the legitimate reasons offered by the defendant were

---

[3]The Colorado Supreme Court has also stated that federal case law regarding employment discrimination is "helpful in developing a thorough approach for proving intentional discrimination in state employment discrimination cases." Colo. Civil Rights Comm'n v. Big O Tires, Inc., 940 P.2d 397, 399 (Colo. 1997).

not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143; accord Bodaghi, 995 P.2d at 298.

The district court found that Ms. Adkins had established a prima facie case of discrimination under the ADEA, Title VII, and the Colorado statute. It also found that the Local 7's explanation that it terminated Ms. Adkins's employment because of poor job performance had satisfied its burden of production. Finally, the district court found that Ms. Adkins had failed to provide sufficient evidentiary support to raise a genuine issue of material fact regarding pretext. We agree that Ms. Adkins failed to provide evidence that Local 7's proffered reason for her termination was pretext for discrimination sufficient to survive summary judgment.

While evidence sufficient to raise an issue of fact as to whether a defendant's proffered explanation is pretextual may take a variety of forms, we have noted that plaintiffs typically demonstrate pretext in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (citations and footnote omitted). "A plaintiff who wishes to show that the

company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." Id. Ms. Adkins does not argue that Local 7's proffered explanation is false. Indeed, it is uncontested that Ms. Adkins failed to process numerous grievances in a timely manner and was the subject of numerous complaints. Ms. Adkins also does not argue that Local 7 acted contrary to a written policy. Rather, Ms. Adkins argues that Local 7 acted contrary to an unwritten policy or company practice by terminating her while not terminating other union representatives with similar employment records.

We agree with the district court that Ms. Adkins has failed to raise a genuine issue of fact as to whether Local 7's legitimate business reason for its actions was pretext for discrimination. Because the evidence of her poor work performance is uncontested, she must rely on her argument that other union representatives with similarly poor employment records were not terminated, and thus Local 7's actions were pretext for discrimination. We find, however, that she has failed to present evidence sufficient to show that any of the other union representatives were similarly situated. While other union representatives had filed untimely grievances, the record does not show that any other union representatives had untimely grievances come to light after being subject to

discipline for untimely grievances. The record contains no mention of any union representatives other than Ms. Adkins that failed to provide documentation of grievance processing to Local 7's legal counsel for use in a pending arbitration. Finally, the record contains no evidence that any other union representatives were the subject of numerous complaints by union members as was Ms. Adkins.

Because we find that Ms. Adkins has failed to raise a genuine issue of fact regarding whether Local 7's articulated reason for her termination was pretext for discrimination, we hold that summary judgment on her claims arising under the ADEA, Title VII, and Colorado Anti-Discrimination Act was appropriate.

## B. Breach of Collective Bargaining Agreement Claim

Ms. Adkins also argues that the district court erred in granting summary judgment on her claim of breach of the collective bargaining agreement. She argues that, under the Staff CBA, she had the right to choose either arbitration or appeal to the Executive Board. Local 7 breached the Staff CBA, she argues, by denying her the opportunity to appeal to the Executive Board. We disagree.

The plain language of Article 21, Section 2 of the Staff CBA provides that "only employees who . . . have not successfully (i.e. won) *availed* themselves of the Grievance or Arbitration procedures for related disciplinary matters" have a

right to appeal a disciplinary action to the Executive Board.  Supp. App. at 27.[4] (emphasis added).  We interpret this provision to distinguish between two types of availment:  successful availment and unsuccessful availment.  Only those who have unsuccessfully *availed* themselves of the grievance procedures established in the Staff CBA may appeal to the Executive Board.  Because Ms. Adkins's earlier grievance was withdrawn before any final determination was made, we find that she has not availed herself – successfully or unsuccessfully – of the grievance procedures in the Staff CBA.  Thus, the exception in Section 2 simply does not apply to her.  Consequently, Ms. Adkins was required by the Staff CBA to submit her grievance to arbitration.[5]

Ms. Adkins is required to exhaust the grievance procedures in the Staff CBA before litigating the issue in federal court.  See Garvin v. Am. Tel. & Tel. Co., 174 F.3d 1087, 1093 (10th Cir. 1999).  This she did not do.  Consequently,

---

[4]Local 7 argues that the word "not" preceding "successfully" in Section 2 is an error, and that only those grievants who have successfully availed themselves of the Staff CBA procedures may appeal to the Executive Board.  Be that as it may, we must apply the language of the Staff CBA as it existed at the time of the events of this case.  Neither Local 7 nor ULSSU has petitioned this court for reformation of the Staff CBA.  We will not reform the agreement sua sponte.

[5]Having found that Ms. Adkins was required to submit her grievance to arbitration, we need not address her arguments that Mr. Ryan lacked authority to file the earlier grievance on her behalf or that her termination constituted a violation of "double jeopardy."  See Griffin v. Davies, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

we find that the district court properly granted summary judgment with regard to her breach of collective bargaining agreement claim.

### III. Conclusion

We find that Ms. Adkins failed to raise a genuine issue of fact regarding whether Local 7's proffered explanation for her termination was a pretext for discrimination. We also find that Ms. Adkins failed to follow the grievance procedures required by the Staff CBA.

Accordingly, we AFFIRM the district court's order of summary judgment.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge