**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GAARD H. MOSES,

    Plaintiff/Counterclaim-
    Defendant/Appellant,

v.

G. A. WELLS; DAVID R.C. BROWN;
L. A.W. BROWN; NEW OPHIR
MINING COMPANY, a Colorado
corporation, and any and all unknown
persons who claim any interest in the
subject matter of this action,

    Defendants/Crossclaim-
    Defendants,

and

UNITED STATES OF AMERICA,

    Defendant/Crossclaim-Plaintiff/
    Counterclaim-Plaintiff/
    Appellee,

and

SECRETARY OF AGRICULTURE;
UNITED STATES FOREST
SERVICE,

    Defendants-Appellees.

No. 04-1330
(D.C. No. 00-MW-2391-(OES))
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, **McKAY**, and **BRORBY**, Circuit Judges.

Plaintiff and counterclaim defendant, Gaard H. Moses, appeals from an order of a United Magistrate Judge[1] granting summary judgment in favor of defendants the United States of America, the Secretary of Agriculture, and the United States Forest Service on his claims for record title and adverse possession, and in favor of the United States on its counterclaim for record title. We affirm.

### Background

The property at issue in this case is an approximate eight-acre patented mining claim known as the Alice Lode Mining Claim (Alice). It is located in the White River National Forest, about three miles south of Aspen, in Pitkin County, Colorado.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]    The parties consented to the exercise of jurisdiction by a magistrate judge.

The undisputed, material facts concerning the Alice began more than one hundred years ago with a location certificate recorded in 1882, and the issuance of a patent to a mining company in 1896. By 1911, D.R.C. Brown had obtained the Alice by a treasurer's deed and a quiet title decree. Then in 1913, Mr. Brown conveyed the Alice to the New Ophir Mining Company, of which he was a director. When the mining company failed to pay the property taxes due for 1914, the Alice was offered at a December 1914 tax sale. Because there were no bidders, the Alice was struck off to Pitkin County through a treasurer's certificate of purchase.

In February 1949, the Pitkin County Treasurer issued a Notice of Purchase of Real Estate at Tax Sale and of Application for Issuance of Treasurer's Deed for the Alice. A copy of the notice was sent via registered mail to Mr. Brown's estate, and Harry Brown signed for the notice on behalf of the estate. When there was no response, a treasurer's deed issued to the Pitkin County Board of County Commissioners (BOCC), and was recorded on April 6, 1949.[2]

In July 1976, Pitkin County passed and recorded a resolution concerning numerous mining claims that it had obtained by treasurer's deeds, including the Alice. The resolution recognized that the claims were located within the White River National Forest and stated that they were "useful and necessary for present

_____

[2]    Pitkin County continued to own the Alice until 1994 when it was conveyed to the United States. From 1949 through 1994, no property taxes were assessed because county-owned property is tax exempt. Colo. Rev. Stat. § 39-3-105.

public open space and parks and recreation." Aplt. App., Vol. IV at 372. And in July 1988, based on numerous "wild deeds"[3] being filed on county-owned mining claims, the County recorded a Public Notice in the records asserting its ownership of numerous properties, including the Alice. To further demonstrate its ownership, the County hired personnel to locate and inspect various claims, including the Alice, and had the property posted with signs: "Pitkin County Public Park and Open Space Welcome Please Pack Your Trash." Aplt. App., Vol. V at 493.

In July 1977, a mining company whose chain of title to the Alice began in 1976 with the recording of a "wild deed" from the heirs of D.R.C. Brown, purported to convey the surface rights in the Alice to plaintiff. After recording the deed, plaintiff claims that he took possession of the property when he started to build a cabin. Then in February 1991, he filed a quiet title lawsuit in Pitkin County District Court concerning the Alice, and named the BOCC as a defendant.

In May 1994, Congress enacted the Exchange Act, Public Law No. 103-255, 108 Stat. 684 (1994), pursuant to which Pitkin County agreed to exchange certain lands, including the Alice, for a 230-acre parcel owned by the United States. As part of the exchange, the County conveyed the Alice to the United States by a quit claim deed, which was recorded on August 17, 1994. The

---

[3] A "wild deed" is defined as "[a] recorded deed that is not in the chain of title . . . ." *Black's Law Dictionary* 446 (8th ed. 2004).

Alice then became part of the White River National Forest. In December 1994, plaintiff and the BOCC filed a stipulated motion to dismiss the state court quiet title action without prejudice. Plaintiff filed his federal court quiet title action against the United States in November 2000.

In October 2002, the Pitkin County Treasurer issued a corrected treasurer's deed for the Alice, which explained that the 1914 tax sale was held late due to "[l]ack of sufficient office help." Aplt. App., Vol. IV at 315. To cure any cloud on the title, Pitkin County executed another quit claim deed to the United States on January 22, 2003.

Standard of Review

The Quiet Title Act permits lawsuits against the federal government "to adjudicate a disputed title to real property in which the United States claims an interest . . ." 28 U.S.C. § 2409a(a). Although the parties' respective claims arise under a federal statute, questions involving real property rights are determined by state law unless federal law requires a different result. *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378-81 (1977); *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986); *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1389 n. 4 (10th Cir. 1980).

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Gossett v. Okla. ex rel. Bd. of Regents for*

*Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1175. When applying Colorado law, the district court should ascertain and apply the state law to reach the result the Colorado Supreme Court would reach if faced with the same question. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). We also review the district court's application of state law de novo. *Id.*

### Record Title

Under Colorado law, "a plaintiff in a quiet title action . . . bears the burden of establishing title in the property superior to that of the defendant . . . [and] the plaintiff must rely on the strength of his own title rather than on the weakness in or lack of title in [the] defendant[]." *Hudson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986) (internal quotation omitted).

Plaintiff's theory is that the 1949 treasurer's deed issued to Pitkin County is void because the 1914 tax sale was untimely. However, he lacks standing to challenge any deficiencies because neither he nor his predecessors in interest had any interest in the Alice in 1949 when the treasurer's deed was issued to the County. *See Turkey Creek, LLC v. Rosania*, 953 P.2d 1306, 1314 (Colo. App. 1998) (holding that a party lacks standing to challenge the validity of a deed issued by a county treasurer in the absence of actual injury to a legally protected interest).

-6-

Next, plaintiff next argues that the correction deed is void because Pitkin County had no authority to request the deed. We agree with the district court's conclusion that this argument lacks merit under Colorado law. Under nearly identical factual circumstances, the Colorado Supreme Court held that where a treasurer's deed contains a defect, the treasurer has not discharged his duty to convey and is not only authorized, but required to issue a correction deed. *White Cap Mining Co. v. Resurrection Mining Co.*, 174 P.2d 727, 735 (Colo. 1946).

Here, the undisputed material facts established that the United States, which can trace its chain of title back to the location certificate recorded in 1881, has superior record title to the Alice over plaintiff. His chain of title is traced back to a "wild deed" recorded in 1976 and conveyed to him in 1977.

Adverse Possession

Although the Quiet Title Act permits lawsuits against the federal government to adjudicate disputed title to real property in which the United States claims an interest, it contains the prohibition that "[n]othing in this section shall be construed to permit suits against the United States based upon adverse possession." 28 U.S.C. § 2409a(n). Plaintiff asserts that the prohibition does not apply if he or his predecessors in interest acquired title to the Alice by adverse possession *before* the United States first claimed an interest[4] in the property in

---

[4]     Plaintiff argues alternatively that the prohibition does not apply until the United States obtains good title to the property. This is contrary to our prior

                                                            (continued...)

-7-

1994. The district court disagreed, and held that the clear and unambiguous language of the statute barred any claims for adverse possession, regardless of when the claim may have accrued.

Assuming for argument that a plaintiff may base a quiet title claim on a claim of adverse possession that has ripened into title prior to the United States claiming an interest in the property, there are no facts in this case to support such a claim. Admittedly, the district court did not reach this conclusion in its decision because it found that plaintiff's adverse possession claims were barred. Nonetheless, we may "affirm a grant of summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (quotation marks and citation omitted).

Colo. Rev. Stat. § 38-41-101(1) provides for adverse possession where a plaintiff and/or his predecessors in interest have been in possession of property for more than eighteen years. The possession must be: (1) actual; (2) adverse; (3) hostile; (4) under claim of right; (5) exclusive; and (6) uninterrupted. *See generally, Salazar v. Terry*, 911 P.2d 1086, 1089, n. 4 (Colo. 1996).

--------

[4](...continued)
cases interpreting the Quiet Title Act and the requirement that the United States need only claim an interest in the property to trigger the Act's limitation provision. *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980); *Stubby v. United States*, 620 F.2d 775, 781 (10th Cir. 1980).

Plaintiff claims that his adverse possession of the Alice began in the summer of 1977, when he received his deed and began construction of a cabin. Throughout these proceedings, he has described his claim as: (1) "[plaintiff] has been in actual possession . . . as the grantee of a warranty deed . . ." (Aplt. App., Vol. VII at 629); (2) "[plaintiff] took actual possession, when he built a cabin . . ." (*Id.*); (3) "[i]n 1977, [plaintiff] recorded his deed and commenced construction of his rural cabin. It is not disputed that [plaintiff] had and has maintained open, hostile, notorious, uninterrupted, and exclusive possession of the Alice . . . ever since." (Aplt. Opening Br. at viii); and (4) "[plaintiff] acquired title to the Alice. . . no later than 1995, eighteen years after completing his cabin . . . ." Aplt. Reply Br. at 20.

By plaintiff's own admission, his alleged adverse possession did not commence until the summer of 1977, and thus could not have ripened into title until the summer of 1995. This is one year later than August 1994, when the United States first claimed an interest in the Alice. Therefore, plaintiff cannot state a claim for adverse possession.

Alternatively, plaintiff argues that his adverse possession may have begun in 1976 because he had a handshake agreement to buy the Alice and began clearing some trees during the winter. Assuming that he did clear some trees during the winter of 1976, this activity does not constitute actual possession under Colorado law. *See generally Smith v. Hayden,* 772 P.2d 47, 52 (Colo. 1989)

(holding that actual possession requires some "visible means, which gives notice of exclusion from the property to the true owner or to the public and of the [adverse claimant's] dominion over it . . . ."). We have found no authority to suggest that clearing some trees on a portion of an eight-acre parcel of land rises to actual possession.

To avoid the consequences of Colo. Rev. Stat. § 38-41-101(2), which provides that a party cannot adversely possess against a county, plaintiff argues that Pitkin County never owned the Alice until 2002, when the correction deed was issued. We do not need to decide this issue because plaintiff could not have adversely possessed against *anyone* until the summer of 1995, which is more than one year later than when the United States first claimed an interest in the Alice.

Likewise, plaintiff's claim of title to the Alice pursuant to Colorado's seven-year adverse possession statutes also fails. Colo. Rev. Stat. §§ 38-41-108 and 38-41-109 require, among other things, the payment of all taxes legally assessed for seven successive years, under color of title made in good faith. Our consideration of these claims begins and ends with plaintiff's admission: "I have not paid taxes on the Alice." Aplt. App. Vol. IV at 341.[5]

---

[5]    Plaintiff argues that his attempt to pay taxes on the Alice in 1990 constitutes compliance with the statutes. We disagree. *See Eberville v. Leadville Tunneling Mining & Drainage Co.*, 28 Colo. 241, 243, 64 P. 200, 201 (1901) (requiring the payment of all taxes legally assessed against the property.

Conclusion

Based on the foregoing undisputed material facts, the district court correctly found that the United States was entitled to summary judgment on plaintiff's claims for record title and adverse possession. The court also correctly entered summary judgment in favor of the United States on its counterclaim for record title to the Alice. The judgment of the district court is AFFIRMED.

We also DENY plaintiff's motion to supplement the record with his interrogatory responses, which he did not present to the district court on summary judgment. He claims in his reply brief that his responses set out other deficiencies in the tax sale, tax certificate, and treasurer's deed. The motion is denied because the responses were not before the court below, *see United States v. Kennedy*, 225 F.3d 1187, 1190-92 (10th Cir. 2000), and further because plaintiff has failed to present any legal argument concerning the alleged additional deficiencies. *See Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992) (holding that merely stating that the trial court erred without advancing any reasoned argument as to why is insufficient appellate argument).

Entered for the Court

Wade Brorby
Circuit Judge