TYMKOVICH, Circuit Judge,
dissenting.
I respectfully dissent because I do not believe the district court abused its discretion in its evidentiary rulings excluding testimony. At the outset, I agree that the district court’s ruling is difficult to decipher, especially looking solely at the minute order. In the context of the trial, however, I think the court’s ruling is clear enough — the proffered testimony from other employees failed to satisfy the relevancy and prejudice requirements of Rule 403. Moreover, I believe the majority makes a mistake in holding that testimony from other employees not similarly situated is admissible even where the plaintiff has made no independent showing of a company-wide policy of discrimination.
A.
A brief review of the evidence the court admitted will place its ruling in perspective. First, despite its pre-trial ruling regarding the witness testimony, the court admitted Exhibits 3 and 4, voluminous documents from Sprint’s “succession planning” file, including notes on employees slated for termination pursuant to the company-wide RIF. Both exhibits show that Sprint kept information on the gender, ethnicity and age of employees alongside other information on their performance and perceived “potential.” Significantly, Exhibit 4 also contains notes indicating that other workers over 40, who did not report to Reddick, were terminated as part of the RIF.
Second, the court also allowed testimony regarding the RIF dismissal of Marc Elster, one of Reddick’s peers who was 51 at the time of his termination. In addition, Jo Renda, a Sprint executive, was called as an adverse witness at trial and examined about the policies behind the RIF and the employees identified in Exhibit 4. She testified regarding fired employees who did not report to Reddick.
This evidence shows that the district court did not apply a narrow interpreta *1232 tion of admissibility to the evidence of company-wide discrimination proffered by Mendelsohn. As the court explained in response to Sprint’s objection to the admission of Exhibit 4,
I’m afraid that you don’t really comprehend what I was saying in the motion in limine — or on the motion in limine. It was never my intent to preclude plaintiff from putting on evidence about the RIF, how it worked whether Sprint followed its own RIF procedures, et cetera. I think because of the factual background of plaintiffs claim, we have to get into what happened to other employees.
* * *
[Defense counsel] wanted the court [via its order in limine] to prohibit other employees ... from coming in and saying, I was RIF’d, it was because of my age and that sort of thing. So that’s where I was targeting my ruling. And I stand by that ruling. I don’t want that kind of evidence to come in. But I think that’s a totally different question from the question whether the RIF, which is your stated nondiscriminatory reason, is a pretext for age discrimination.
(Tr. at 93-94.)
Finally, in addition to admitting actual evidence of pretext, the district court rejected a jury instruction proffered by Sprint, which would have instructed jurors to consider only evidence about employees similarly situated to Mendelsohn. The court explained that evidence outside of Reddick’s chain of command had been allowed to come in as relevant to the question of pretext: “The reason I said plaintiff could offer that sort of evidence was because it might yield an inference that the so-called legitimate nondiscriminatory reasons were pretextual.” (Tr. at 1228.) Indeed, the court included an instruction that reminded the jury that it could, on the basis of all evidence presented at trial, reject Sprint’s reasons for firing Mendelsohn and “conclude that plaintiffs age was a determining factor in [Sprint’s] decision to terminate her employment.” (Jury Instr. 12.)
In sum, it appears to me that the plaintiff had an adequate opportunity to introduce relevant evidence of Sprint’s corporate policies and practices surrounding the RIF and argue that the RIF was itself a pretext for age discrimination. I am further convinced of this after studying the proposed testimony of the five witnesses proffered by Mendelsohn and excluded by the district court. Their proposed testimony seems a mixture of hearsay and speculation that would be marginally admissible in any event. I cannot say that the court erred in excluding such testimony under the standards of Rule 403.
To be sure, the testimony may have helped Mendelsohn’s case. But this is not the question here. We are properly concerned with whether the court abused its discretion in excluding the testimony. I think not. This seems a classic judgment call. I readily admit that the court would not have erred in admitting the evidence, see, e.g., Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir.1990), but I am equally confident that the court did not abuse its discretion in choosing to exclude it.
B.
The larger problem with the majority’s position is it suggests that anecdotal evidence from employees throughout a large organization will be per se admissible when offered in the context of alleged discrimination in a RIF. This appeal illustrates the hazard of such an approach for several reasons.
The first reason is the lack of any statistical or other direct evidence that supports an inference of enterprise-wide discrimination. Given the size of Sprint, the fact that *1233 Mendelsohn found five former employees who believed they were victims of age discrimination is not meaningful until a specific evidentiary foundation has been laid. The proffer of evidence here is devoid of independent evidence showing that Sprint had company-wide discriminatory policies. Even taking as true Mendelsohn’s assertion that these witnesses would provide credible evidence that managers other than Reddick were motivated by discriminatory animus, this does not in and of itself support the conclusion that Reddick was so motivated.[1] Nor does it establish that the RIF’s “subjective criteria” was a pretext for age discrimination. While Sprint may well have had policies designed to discriminate against older employees, without more, the excluded testimony does nothing to establish that fact, nor does it directly support an inference that Mendelsohn’s termination was wrongfully motivated. See Carpenter v. Boeing Co. 456 F.3d 1183 (10th Cir.2006) (discussing use of statistical evidence to support claim of disparate treatment). The evidence must tend to show that the company had a policy to discriminate, not merely a policy applied in a discriminatory manner by an individual supervisor or supervisors.[2]
The second and more important hazard of the majority’s approach is the narrow reading it gives to Aramburu. The so-called “same supervisor” rule articulated in that case recognizes that where an employee has putatively been fired for the violation of a workplace rule, an inference of discrimination is more likely where the same supervisor disciplines similarly situated employees differently. Aramburu v. The Boeing Co., 112 F.3d 1398, 1403 (10th Cir.1997).
But it is equally plausible that an employer could have a company-wide policy of using disciplinary actions as a pretext for unlawful discrimination. In such a case, I suspect we would modify the applicable relevancy standard in order to account for and allow evidence of a company-wide policy.
I would do the same in the RIF context and apply the Aramburu rule in cases like this one unless “independent evidence of specific enterprise-wide policy” has been developed. Rivera v. City and County of Denver, 365 F.3d 912, 922 (10th Cir.2004). Since Mendelsohn did not establish a foundation that the proffered evidence would support such a finding, and since she otherwise had the opportunity to present evidence to the jury of other older employees subject to the RIF, the district court did not abuse its discretion in excluding the additional witness testimony.[3]
*1234 Our holding to the contrary creates a rule that suggests even the most tangentially relevant and prejudicial testimony by former employees is per se admissible. Such a rule runs counter to our traditional deference to district courts as the primary arbiters of admissibility.

. Of the five proffered witnesses, one was fired a full year before Mendelsohn and another was hired at age 52. The others had grievances related to their supervisors that are too general to credit on this record.

. This is not to suggest that some of the proffered evidence might be relevant. But having said this, the evidence must still satisfy the rules of evidence. It is not enough for a former employee to claim discrimination. We have always required a nexus between the testimony and the allegation, either through personal knowledge or statistical support. Without more foundation, in my view Mendelsohn has not demonstrated a Sprint-wide policy of discrimination embodied in the RIF. And none of the excluded evidence ties the policy to the decision to terminate her.
The majority relies on Gossett v. Board of Regents, 245 F.3d 1172 (10th Cir.2001). But Gossett cannot be read broadly to suggest that any proffer of evidence is automatically admissible, without meeting the requirements of Rules 401 or 701. In that case, the court concluded the witnesses (at the summary judgment stage) claimed personal knowledge of the discriminatory policy and its application.

.The majority alternatively suggests that our "established rule that a district court necessarily abuses its discretion when it commits an error of law ... or fails to consider the *1234 applicable legal standard” forces reversal here. Majority Op. at -- n. 4 (internal quotations and citations omitted). Assuming, for the sake of argument, that this rule applies in the context of an evidentiary ruling and that the legal error in Mendelsohn's case was not harmless, all the rule would require is reversal and remand for application of the proper rule. The majority has not done this, but has instead insisted on finding Mendelsohn's proffered evidence to be per se admissible despite the evidentiary infirmities. The majority's note on the operation of our law regarding legal error is therefore logically in-congruent with its holding that Mendelson’s evidence must be admitted at a new trial.