# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

---

## No. 94-60496

---

**PHILIP J. HAUN,**

**Plaintiff-Appellee,
Cross Appellant,**

**VERSUS**

**IDEAL INDUSTRIES, INC.,**

**Defendant-Appellant,
Cross Appellee.**

---

Appeals from the United States District Court
for the Southern District of Mississippi

---

April 11, 1996

Before SMITH, WIENER and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

The jury found that Defendant Ideal Industries (Ideal) fired, and subsequently refused to rehire, Plaintiff Philip Haun (Haun) because of his age. Ideal appeals from the judgment rendered against it on this verdict. Finding that the evidence was sufficient to support the jury's determination of age discrimination, we affirm the judgment of the district court.

Haun cross-appeals the district court's grant of judgment as a matter of law against him on his state law intentional infliction of emotional distress claims. We find that no reasonable juror could conclude that the conduct was so extreme and outrageous as to be

utterly intolerable in a civilized community. ***White v. Walker***, 950 F.2d 972, 978 (5th Cir. 1991). Therefore, we affirm the district court's grant of judgment as a matter of law on that claim.

## BACKGROUND

Haun was fired by Ideal in 1992, after 22 years of employment with the company. Haun was 51 years old when he was fired. Ideal manufactures and sells electrical products. Ideal sells Strip Master and Original Equipment Manufacturer (OEM) products. Strip Master products are wirestrippers, while OEM products are wire-splicing machines used by electrical appliance makers in the manufacturing process.

Haun began working for a subsidiary of Ideal as a salesman in 1970. His job involved leasing and servicing OEM and Strip Master products. In 1984, Haun became a Regional Specialist, and began calling on architectural and engineering firms, encouraging them to specify Ideal products in their construction plans. He continued to sell OEM and Strip Master products. Haun became the Senior Area Sales Manager in Mississippi in 1986, which involved training less experienced sales people, as well as selling OEM and Strip Master products. Haun's supervisor during his first 18 months as Senior Area Sales Manager was Don Ambrose. In 1990, Ambrose asked Haun to join him in a new four salesperson division that he was managing which would specialize in OEM sales. Haun accepted the offer. Starting in January 1991, Haun sold OEM equipment in the southwestern United States, from Mississippi to California. During 1991, he increased OEM sales by 140%.

In January 1992, at Haun's annual performance review (called a Performance Appraisal and Development or "PAD"), Ambrose told Haun that there were several problems with his performance and withheld his merit pay increase for 90 days. Ambrose told Haun

2

that to remedy the problem he should bring in two new accounts during the first quarter of 1992. Haun brought in four new accounts.

At his review, Haun specifically asked Ambrose if he was being placed on probation. He was told that he was not. However, in April 1992, Ambrose sent Haun his PAD, which indicated that Haun had been on probation for the previous three months. Haun was upset when he learned that he had been on probation, because probationary status meant that one's job was in jeopardy. Haun called Ambrose and asked him to remove the probationary language from his PAD and to remove all references to probation from his personnel records. Ambrose promised to do so. However, it was not until June 19, 1992 that, upon the vice president of human resources' prodding, Ambrose finally corrected the PAD.

Ambrose wrote Haun a letter on June 18, 1992, telling him that all references to the probation had been removed from his personnel file. This was not true. Probation references were still in Haun's personnel file as late as the trial of this case. Additionally, the corrected PAD was not put in Haun's file until after the decision to fire Haun had been made. At trial, Ambrose testified that his failure to timely correct the PAD and remove the probation references was a "goof."

During 1992, Ideal decided to combine the OEM and Strip Master Divisions into one six salesperson division. There were ten people selling OEM and Strip Master products before the reorganization (four OEM and six Strip Master), so four people had to be let go. Haun was one of those four.

Of the four discharged employees, three were over 40, and the only discharged employee under 40 received another job with the company. Both Haun and his prior supervisor, John Vander Pan, testified that Haun was qualified for the OEM and Strip Master sales positions. Haun was never informed of four sales positions for which he was qualified

3

that became available after July 1, 1992. The jobs were not advertised internally over voice mail, even though the company handbook said that it was policy to do so.

In mid-August, 1992, Haun learned, through informal means, of a sales position with Ideal in Virginia. The job had been held by Glenn Morgan, age 42, until Morgan was fired in early August 1992. When Haun learned that the job was open, he called Wes Fritsche, Morgan's supervisor, and applied for the job. Fritsche told him that the job was not available, because Morgan's position was being eliminated and Fritsche would take over the duties. However, Morgan's job was not eliminated and, three weeks later, Ideal advertised the position in the Richmond, Virginia, newspaper. The job was filled by a 26 year old with no prior sales experience.

When Morgan was terminated, he was told that it was because of reorganization, as opposed to lack of performance, and that he could reapply. Yet when Morgan reapplied after seeing the newspaper ad for his old position, he was rebuffed. Morgan was told "Ideal is changing . . . you are not a part of it." Ideal later told the Equal Employment Opportunity Commission ("EEOC") that Morgan was fired due to lack of performance. When Morgan was terminated, he was told that "[t]his is the best; that this happens, now that -- you know, you wouldn't want to be in your 50's trying to find a job. You wouldn't want to wait ten years down the road, like Phil Haun . . . and try and find employment."

John Vander Pan, another Ideal employee, also testified that age entered into Ideal's employment decisions. In 1991, Vander Pan and Gary Ottaviano, an Ideal human resources official, interviewed prospective sales people for Ideal. The most qualified applicant was a man in his fifties, who Ottaviano called "the best guy we've seen so far." Vander Pan testified that he wanted to hire the man, but Ottaviano said they could not because Vince Nall, president of Ideal, would not approve him "because of his age."

4

Vander Pan also testified that the company tried to force him out because of age. Vander Pan, who was in his early fifties, worked as a Regional Director for Ideal, a management position, until mid-1992. During 1991, his region was the best, out of nine, in sales in the country. Nonetheless, in July 1992, he was demoted to a sales person position. Vander Pan testified that in 1992, shortly after his fiftieth birthday, his boss told him "[w]ell, you know, happy birthday. You are 50 years old. You know, have you thought about your -- your career choices?" When Vander Pan asked him what he meant by this, his boss told him that it was time for him to "maybe look elsewhere for employment."

On July 1, 1992, Haun was told that he was being dismissed from Ideal, effective September 5, 1992. Ambrose told him about the reorganization and that Haun was not one of the sales people who was being retained. Ambrose told Haun that his termination was not performance related, but rather, "strategic and business" factors were used to determine who was kept.

At the meeting, Ambrose offered Haun a severance package. However, to qualify for it he had to sign a "Termination Agreement and Release." The agreement released Ideal from any claims Haun might have had regarding the termination. The agreement also required Haun to "speak well" of Ideal. Haun did not sign the agreement.

Haun told Ambrose that he wanted to remain with Ideal and asked to be informed of other sales jobs in the company. Haun was told that he would be informed of any sales openings at Ideal, both before and after his September 5 termination date.[1]

Ideal put on testimony that it had hired several people near Haun's age around the time that he was fired.

---

[1] At trial, Ideal claimed that the promise to notify Haun of jobs after September 5 was conditioned on Haun's signing the agreement.

5

Haun filed suit against Ideal in federal district court, alleging that Ideal, in firing him, violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. Haun also brought a state law claim that Ambrose's actions regarding the probation constituted intentional infliction of emotional distress.

The case was tried to a jury and the jury found that Ideal wilfully violated the ADEA. Haun was awarded back pay of $58,447.60 and liquidated damages of the same amount. Haun also received $73,643.02 in attorneys' fees, $242,321 in front pay and post-judgment interest. The district court granted judgment as a matter of law in favor of Ideal on Haun's state law intentional infliction of emotional distress claim.

### Sufficiency of the Evidence

"On appeal of a jury's verdict of age discrimination, we need not address the sufficiency of [the plaintiff's] prima facie case, but proceed to determine whether there was sufficient evidence upon which a jury could find that discrimination occurred." *Weaver v. Amoco Production Co.*, 66 F.3d 85, 87 (5th Cir. 1995); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 122-23 (5th Cir. 1992). That is so because, once the employer articulates its non-discriminatory reason, the *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, presumption framework drops out of the case. *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2753-54 (1993). After reviewing the record, we conclude that there was substantial conflict in the evidence presented, such that reasonable and fair jurors could disagree as to whether age was a determinative factor in Ideal's decision to terminate Haun and its subsequent refusal to hire him back. *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (*en banc*); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1146 (5th Cir. 1991).

Ideal argues that "where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring,

6

a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." ***Proud v. Stone***, 945 F.2d 796, 797 (4th Cir. 1991)*; see **Lowe v. J.B. Hunt Transp. Inc.***, 963 F.2d 173, 175 (8th Cir. 1992); ***LeBlanc v. Great American Ins. Co.***, 6 F.3d 836, 847 (1st Cir. 1993).  While evidence of such circumstances is relevant in determining whether discrimination occurred, we decline to establish a rule that no inference of discrimination could arise under such circumstances.  Instead, we prefer to look at the evidence as a whole, keeping in mind the ultimate issue: Whether age was a determinative factor in the employment decision.  ***Hazen Paper Co. v. Biggins***, 113 S. Ct. 1701, 1706 (1993); *see **St. Mary's***, 113 S. Ct. at 2753-54.

Haun presented evidence from Vander Pan that the president of Ideal, Vince Nall, had informed Ideal human resources officials that he did not want to hire older workers.  Vince Nall did not testify in this case.  Vander Pan's testimony would allow a reasonable juror to conclude that officials at Ideal used age as a determinative factor in employment decisions generally.  This climate of age discrimination, coupled with the evidence as a whole, especially Haun's experience applying for the Virginia job, would allow a reasonable juror to infer that age was a determinative factor in Ideal's decision to fire, and then refuse to rehire, Haun.

The circumstances surrounding the Virginia job certainly allow an inference of age discrimination.  As noted earlier, the salesman who had the job was over 40 years of age and was fired, with Ideal telling him that the firing was not performance related, but merely a restructuring.  When Haun applied for this same job, he was told that it was not available, because the fired salesman's supervisor was taking over the position.  This never happened and three weeks later Ideal advertised the position in the Richmond paper.  When the fired

7

salesman reapplied for the job he was turned down and a 26 year old with no prior sales experience was hired.

Finally, there was evidence in the record that Ideal lied about the reason it fired Haun. For example, Ideal told Haun that his firing was not performance related, while at trial it argued that he was fired because of performance. As we recently clarified in ***Rhodes v. Guiberson Oil Tool***, slip op. at ___ (5th Cir. 1996) (*en banc*), proof that an employer lied to the employee about its reason for the discharge is not sufficient by itself to demonstrate unlawful discrimination under the ADEA; but such circumstantial evidence may be considered by the jury, along with the other evidence in this case, in arriving at the ultimate conclusion. Because this case was tried fully to the jury, our only inquiry is whether Haun proved the ultimate issue: That age actually motivated and was a determinative factor in Ideal's employment decision. ***Hazen Paper***, 113 S. Ct. at 1706.

"The jury heard both sides and the jury spoke. That is about all there is to say about age discrimination liability in this case. There were clearly two sides to this case." ***Wilson***, 939 F.2d at 1146. The jury believed Haun and his evidence; it did not believe Ideal. Consequently, the jury's verdict on age discrimination is affirmed.

### Evidentiary Issues

*The Termination Agreement*

Haun sought to have admitted into evidence the "Termination Agreement and Release" (the "agreement") that Ideal prepared and asked Haun to sign when they fired him. On motion in limine by Ideal, the district court originally excluded the agreement, saying that it was inadmissible under Federal Rule of Evidence 408,[2] which precludes the admission of

---

Rule 408 reads, in relevant part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting

8

statements made in settlement negotiations.  However, at trial, the district court reversed itself, and relying upon the Ninth Circuit decision in ***Cassino v. Reichold Chemicals, Inc.***, 817 F.2d 1338 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047 (1988), held that the agreement did not fall under Rule 408.  In ***Cassino***, the employer asked the employee to sign a release when he was fired.  The Ninth Circuit held that there was no dispute between the parties at the time of the firing, so the release did not fall within Rule 408.

We have concluded to pretermit any decision as to whether the release was admissible in this case;[3] and assume arguendo that it was <u>not</u> admissible.  However, that assumption does not end our examination.  In order to be reversible error, an erroneous evidentiary ruling must affect a party's "substantial right."  F.R.E. 103(a).  In determining whether a party's substantial rights have been affected, we "'must proceed on a case to case basis rather than apply a mechanical rule.'"  ***Munn v. Algee***, 924 F.2d 568, 573 (5th Cir. 1991) (quoting 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[01] at 103-6 (1990)).  "An error is harmless if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict."  ***Pregeant v. Pan Am. World Airways, Inc.***, 762 F.2d 1245, 1249 (5th Cir. 1985).  The party claiming error has the burden of showing how its substantial rights were effected.  ***Munn***, 924 F.2d at 573; ***Stitt Spark Plug***

---

or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Our decision to pretermit this issue was based on two competing concerns: first, under the facts of this case there is some doubt that this agreement was intended to be the product of any actual settlement negotiations; but on the other hand there is doubt about the continuing precedential value of ***Cassino*** given that since that case was decided Congress passed the Older Workers Benefit Protection Act, 29 U.S.C. 626(f) which clearly contemplates arguments to be effective as of "termination".

*Co. v. Champion Spark Plug Co.*, 840 F.2d 1253, 1258-59 (5th Cir.), *cert. denied*, 488 U.S. 890 (1988).

Ideal has failed to identify any violation of a substantial right. In its briefing, Ideal merely states that "[t]he improper admission of [the agreement] and references to [the agreement], over Ideal's objection, affected a substantial right of Ideal's and compels reversal."

After reviewing the record, we are convinced that Ideal's substantial rights were not affected by admission into evidence of the agreement. The agreement contains no admissions of liability; it merely states that in exchange for certain benefits, Haun waives any employment claims he might have against Ideal and he promises to "speak well" of Ideal. In light of the other evidence of discrimination discussed above, we find that the agreement did not influence the jury or had but a very slight effect on its verdict. Therefore, the district court's admission of the agreement was harmless.

*Vander Pan's Opinion Testimony*

Ideal argues that the district court erred in admitting certain portions of John Vander Pan's deposition testimony. The district court allowed approximately 30 lines of contested testimony in which Vander Pan expressed his opinion that Ideal was deliberately phasing-out older workers. Specifically, Vander Pan testified that (1) in the past he had been told to "build a case" against an older worker; (2) remarks had been made about his own age by superiors; and (3) Ideal aggressively pushed older employees into early retirement. Ideal contends that the testimony should have been excluded because it was in response to leading questions, the testimony was irrelevant and the opinions were based on hearsay. "The admission of evidence is within the sound discretion of the district court." *Olitsky*, 964 F.2d at 1474. The district court did not abuse this discretion in admitting the deposition

10

testimony. Vander Pan's testimony was properly admitted as the opinion of a lay witness. Federal Rule of Evidence 701 allows lay opinion testimony that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Vander Pan's opinion testimony that Ideal was phasing out older workers was based on his perception and helped the jury determine whether Ideal discriminated. *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1094 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1252 (1995); *Wilson*, 939 F.2d at 1146. Thus, the testimony fell within Rule 701.

## Intentional Infliction of Emotional Distress

Haun asserts that the district court erred in granting Ideal's motion for judgment as a matter of law on his Mississippi law intentional infliction of emotional distress claim. We review judgments as a matter of law de novo, using the same standard of sufficiency as the trial court. *Williams v. Briggs Co.*, 62 F.3d 703, 705 (5th Cir. 1995). Judgment as a matter of law is appropriate when "the evidence at trial points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Boeing*, 411 F.2d at 374-75. *Omnitech Int'l v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir.), *cert. denied*, 115 S. Ct. 71 (1994).

Haun's intentional infliction of emotional distress claim is a pendent state law claim. Thus, we apply Mississippi substantive law in determining whether Ideal's motion was properly granted. *Wilson*, 939 F.2d at 1143. Mississippi courts recognize intentional infliction of emotional distress when "the defendant's conduct . . . evokes outrage or revulsion." *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss. 1981). As we have stated before, it is difficult to prove intentional infliction of emotional distress:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict

11

emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*.

*White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 46, comment d).

Haun contends that Don Ambrose's conduct regarding probation was so outrageous and beyond the bounds of decency as to be intentional infliction of emotional distress. Ambrose lied to Haun about his probationary status, waited three months before informing him of the probation and failed to remove him from probation. Haun put on testimony from Ideal officials that Ambrose's conduct was the equivalent of "stabbing someone in the back."

Ambrose's conduct certainly was not praiseworthy; it might even rise to the level of wrongful. However, no reasonable juror could conclude that his conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *White*, 950 F.2d at 978. Therefore, the district court did not err in granting judgment as a matter of law in favor of Ideal on Haun's intentional infliction of emotional distress claim.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is, in all respects, AFFIRMED.