IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-60016

Summary Calendar
_____

AUDREY FAYE HOOKER

                    Plaintiff - Appellee - Cross - Appellant
v.

VICTORIA'S SECRET STORES, INC.

                    Defendant - Appellant - Cross - Appellee

_____

Appeal from the United States District Court
for the Southern District of Mississippi
No. 01-60016
_____
November 21, 2001

Before KING, Chief Judge, and JOLLY and DEMOSS, Circuit Judges.

PER CURIAM:[*]

     Defendant-Appellant-Cross-Appellee Victoria's Secret Stores,

Inc. appeals the district court's judgment on an age

discrimination claim in favor of Plaintiff-Appellee-Cross-

Appellant Audrey Faye Hooker.  Hooker cross-appeals the district

court's judgment in favor of Defendant on a claim for intentional

infliction of emotional distress and the court's award of damages

---

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

and attorney's fees and expenses. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

In August of 1996 at age fifty-nine, Plaintiff-Appellee-Cross-Appellant Audrey Faye Hooker began work as an Assistant Manager for employer Defendant-Appellant-Cross-Appellee Victoria's Secret Stores, Inc. ("VSS") in one of their retail lingerie stores. Hooker had nearly twenty years experience in the retail lingerie field. Hooker began at one VSS location but then asked for, and received, a transfer to VSS's Metro Center location. The store manager, Erin Titman, served as Hooker's direct and sole supervisor at that location and was hired within a few months after Hooker's transfer. Hooker estimated Titman's age as "early 30s" during the relevant time. In July of 1998, Hooker resigned from VSS.

On May 11, 1999, Hooker filed an age discrimination claim against VSS under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (1999) ("ADEA"), alleging constructive discharge, as well as a claim under Mississippi state law for emotional distress. VSS subsequently filed a motion for summary judgment on both claims, which the district court denied. Both claims went to trial in June of 2000. At the close of Hooker's case, VSS filed a motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of

Civil Procedure ("FRCP"). The district court granted VSS's FRCP 50(a) motion as to the state law claim of intentional infliction of emotional distress, but denied the motion as to the ADEA claim. The jury rendered a verdict in favor of Hooker on the ADEA claim and awarded back pay damages in the amount of $46,655.05. The jury also determined by special interrogatory that VSS had willfully violated the ADEA. Hooker then moved for front pay damages and attorney's fees and, based on the jury's finding of willful violation, for liquidated damages. The district court denied the front pay motion with prejudice and awarded liquidated damages in the amount of $46,655.05. The district court granted Hooker's motion for attorney's fees, but reduced the requested award. VSS moved to alter or amend the judgment on the ADEA claim pursuant to FRCP 59(e), or for a new trial pursuant to FRCP 59(a). Hooker moved for a new trial on her claim of intentional infliction of emotional distress pursuant to Rule 59(a). The district court denied all three motions.

VSS appeals the judgment in favor of Hooker on the ADEA claim and the district court's denial of the motions to alter or amend the judgment and for new trial. Hooker cross-appeals the district court's grant of VSS's motion for judgment as a matter of law on the emotional distress claim and its denial of her motion for a new trial on that claim. Hooker also cross-appeals

the district court's denial of front pay and the reduction of her attorney's fee award.

## II. ADEA CLAIM

### A. *Standard of Review*

VSS is unclear and inconsistent in its briefing regarding whether it now appeals the district court's denial of its FRCP 50(a) motion for judgment as a matter of law on the ADEA claim; or whether it appeals the jury's verdict for Hooker on the three substantive ADEA issues, including, constructive discharge, discriminatory age-based animus, and mitigation of damages; or whether it appeals the district court's "upholding" of the verdict on those three substantive issues implicit in the court's denial of VSS's two FRCP 59 motions. All three substantive ADEA issues were submitted to the jury, which made findings for Hooker on all three. Whether this court reviews the district court's original denial of judgment as a matter of law subsequent to a jury verdict on any of those three issues, or whether we review the jury verdict itself, this court applies a deferential "sufficiency of the evidence" standard in light of the fact that there are jury findings on all three issues. See, e.g., Cozzo v. Tangipahoa Parish Council-President Gov't, 262 F.3d 501, 507 (5th Cir. 2001) ("We review de novo [a] district court's ruling on a motion for judgment as a matter of law but note that, in an action tried by a jury, such a motion is a challenge to the legal

4

sufficiency of the evidence supporting the jury's verdict.") (internal quotation and citation omitted). We review the district court's denial of VSS's motions to alter or amend the judgment on the verdict, and for new trial, for abuse of discretion. Youmans v. Simon, 791 F.2d 341, 349 (5th Cir. 1986) (motion to alter or amend judgment); Woodhouse v. Magnolia Hosp., 92 F.3d 248, 256 n.6 (5th Cir. 1996)(new trial). The sufficiency of the evidence standard has been defined by this court to mean that even where reasonable jurors could differ on conflicting evidence that fails to "overwhelmingly" support either party's case, the evidence is nevertheless sufficient if reasonable minds could make the challenged jury finding of fact based on specific evidence in the record. See, e.g., Hansard v. Pepsi-Cola Metro. Bottling Co., Inc., 865 F.2d 1461, 1464-65 (5th Cir. 1989) ("The evidence in this [ADEA] case supported neither side overwhelmingly. It follows that there is sufficient evidence to support the jury's determination that [the employee] was discharged."); Haun v. Ideal Indus., Inc., 81 F.3d 541, 546-47 (5th Cir. 1996) (upholding a jury verdict of age discrimination despite recognition of a "substantial conflict in the evidence presented" and noting that where "[t]he jury heard both sides and the jury spoke" then "[t]hat is about all there is to say about age discrimination liability in this case").

### B. Constructive Discharge

A showing of constructive discharge requires that the plaintiff prove by a preponderance of the evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. See Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000). This court considers several factors relevant to a determination that an employee reasonably could have felt her working conditions were sufficiently intolerable, including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. Id. (internal quotation omitted). This court has further held that a determination of intolerability "depends on the facts of each case", and that the factors are considered "'singly or in combination'", indicating that no one factor predominates. See id. (quoting Barrow v. New Orleans Steamship Ass'n, 10 F. 3d 292, 297 (5th Cir. 1994)).

The jury heard the following evidence, inter alia, regarding the intolerability of Hooker's work situation. Hooker testified that she was the only employee required during her

6

tenure to come into morning meetings, to return home, and then to return to the store later in the afternoon to work. Hooker testified that on one occasion when she had pain in her foot that made her unable to stand, she asked Titman to find a replacement for her, but because on that day the location was short-staffed, Titman told Hooker that Hooker must report to work. Hooker testified that Titman then told Hooker, "I don't care if you go down there and you sit on a stool all day."

Hooker further testified that, on another occasion, when Titman was assisting a customer and attempting to sell that customer some lingerie, Titman pointed toward Hooker and told the customer that "even" Hooker wore VSS's "G-string panties." While Hooker admitted that she agreed with and signed one performance evaluation given to her by Titman, Hooker testified that she did not agree with a second performance evaluation given a few months before she resigned, but signed the evaluation in the belief that she could not get her merit increase without signing. Hooker testified that she felt belittled by Titman and that the supervisor treated no other workers as harshly as Hooker.

The jury also heard testimony of Hooker's co-workers regarding VSS supervisor Titman's treatment of Hooker. Kym Wiggins testified that Titman was continually "condescending" toward Hooker and always "sounded so exasperated" when dealing with Hooker, and that Titman did not act in the same manner toward other workers. Gloria Proctor testified that when talking

to employees other than Hooker, Titman was "nice", but that when talking to Hooker, the supervisor used a "reprimanding-a-child type" voice. Proctor further testified that the "tone of voice that [the supervisor] would use with [Hooker] versus everybody else" was so noticeably different that it prompted Proctor to start paying closer attention to the relationship between Hooker and Titman.

Cory Wofford, testified that Titman maintained a condescending tone toward Hooker and singled out Hooker for constant criticism not given to younger, less experienced workers who made similar mistakes. Wofford testified that Titman constantly made remarks about Hooker's age and "incompeten[ce]" in front of him and other workers and that the supervisor maintained such a constant "hostile" manner toward Hooker that Wofford considered it "harassment." Donyelle Russell testified that Hooker was singled out for harsher criticism than other workers, criticism Russell said was delivered in a "loud[er]" and more "upset" manner than criticism given to other workers. Russell testified that Titman treated workers other than Hooker "normal[ly]", but that Titman made repeated remarks regarding how Hooker should "quit" because she was too "old." Russell further testified that if she had been treated in the same manner by Titman as was Hooker, Russell "probably would have left."

VSS contends that this evidence is insufficient to support a finding of constructive discharge because it is specious, because

8

the evidence is susceptible to different interpretations, and because some of the evidence -- such as the two performance evaluations signed by Hooker leading to at least one merit increase -- mitigates any picture of intolerability. VSS claims, for example, that the comment made by Titman to the customer regarding Hooker's wearing of G-strings was a "truthful[]" attempt to assist that customer.[2] VSS further contends that some of the co-workers' testimony is of limited value because those workers had limited contact with Hooker due to the fact that they worked only in a physically co-joined VSS fragrance store, but not for the VSS lingerie business, and because the workers did not work during every shift Hooker worked with Titman.[3]

This is not an incontrovertible case for constructive discharge implicating a multiplicity of the seven criteria this

---

[2]  VSS also claimed that the incident between Hooker and Titman on the day Hooker requested leave from work for foot pain was merely an attempt by the supervisor to "accommodat[e]" Hooker by suggesting Hooker place a chair on the floor and only perform supervisory duties that day.

[3]  VSS makes an argument in the alternative that, even if this court upholds the jury finding of constructive discharge, Hooker failed to establish an "adverse ultimate employment decision," as is required by the ADEA and Title VII, since Hooker suffered no actions such as denial of merit increases or demotions. VSS's argument ignores that constructive discharge is an ultimate employment action for ADEA purposes, one that takes the place of actual discharge or other adverse employment actions. Cf., Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999) ("Employer actions that can result in [Title VII] liability include more than just actual or constructive discharge ... [and] can include discharges, demotions, refusals to hire, refusals to promote, and reprimands.").

9

court finds relevant to determining workplace intolerability. However, that VSS can point to conflicting evidence or to incidents in the record susceptible to differing, even innocent, interpretations, is not sufficient to warrant disturbing the jury verdict. See, e.g., Hansard, 865 F.2d at 1464-65; Haun, 81 F.3d at 546-47. Examining all the evidence heard by the jury in this case regarding incidents between Hooker and Titman, as well as the testimony of Hooker's co-workers that the supervisor singled out Hooker for different, harsher treatment, this court cannot say that the jury had insufficient evidence to support its finding that Hooker's employment had become objectively

intolerable.[4]  The jury finding of constructive discharge is

_____

[4]  VSS further points to seven decisions by this court in ADEA and Title VII cases that VSS contends establish such a high threshold of intolerability as a matter of law in this circuit that Hooker's claim must fail.  VSS contends that because those cases involve arguably more egregious circumstances than the instant case, this court is compelled to overturn the jury's finding.  VSS's reliance on these cases is misplaced and the cases establish no such threshold as a matter of law.

In four of these decisions, this court upheld bench rulings or jury findings that an employer <u>did</u> constructively discharge an employee in arguably more egregious circumstances.  See <u>Cortes v. Maxus Exploration Co.</u>, 977 F.2d 195, 200-01 (5th Cir. 1992) (upholding district court's bench finding that employee was constructively discharged where employee's charges of sexual harassment were not responded to by management and she was offered a transfer); <u>Stephens v. C.I.T. Group/Equip. Fin., Inc.</u>, 955 F.2d 1023, 1027-28 (5th Cir. 1992) (upholding jury verdict finding constructive discharge where manager was demoted, forced to train his younger successor, and received slight pay reduction); <u>Wilson v. Monarch Paper Co.</u>, 939 F.2d 1138, 1145-48 (5th Cir. 1991) (upholding jury verdict for a former vice-president with thirty years experience who was demoted to janitorial duties and re-assigned to a work at a location where he developed an allergy to dust); <u>Guthrie v. J.C. Penney Co., Inc.</u>, 803 F.2d 202, 208 (5th Cir. 1986) (upholding jury verdict of constructive discharge based on repeated questioning of employee regarding retirement plans, subjecting  employee to harsher criticism and treatment than other workers, and downgrading employee's managerial performance rating by one point on a five-point scale).  In three other decisions, this court upheld summary judgment on, or dismissal of, employment discrimination claims in favor of the employers based on rationales with little bearing on the instant case.  See <u>Guthrie v. Tifco Indus.</u>, 941 F.2d 374, 377-79 (5th Cir. 1991) (upholding summary judgment for employer because the employee failed to prove that the employer's proffered reason was pretextual); <u>Bodnar v. Synpol, Inc.</u>, 843 F.2d 190, 193-94 (5th Cir. 1988) (upholding summary judgment for employer based on court's finding that offers of early retirement were part of a legitimate business decision and not enough alone to create constructive discharge); <u>Christopher v. Mobil Oil Corp.</u>, 950 F.2d 1209, 1216-17 (5th Cir. 1992) (upholding district court's dismissal of an ADEA claim because it was time barred and noting that an offer of an attractive retirement plan was sufficient to put the employees on notice of constructive discharge for statute of limitations purposes).  That this court upheld findings of constructive

therefore affirmed.

## C.  Discriminatory Animus

VSS correctly points out that the ADEA will not protect an employee from arbitrary personnel decisions, but only from those caused by discriminatory animus based on age.  See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 (5th Cir. 2000).  When the evidence of age-based animus consists of remarks about an employee's age, as does the evidence in the instant case, this court has set forth four criteria by which it judges the sufficiency of that evidence.  To be actionable, such remarks must be: (1)  age related; (2) made proximately in time to the employment decision at issue; (3) made by an individual with authority over the employment decision; and (4) related to the employment decision.  See id. at 255 n.10. (quoting Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996)) (internal quotation omitted).  VSS contends that the remarks made by Titman fail to satisfy the fourth criterium of the Brown test because they are merely "stray remarks" and thus are insufficiently related to any of Titman's conduct giving rise to the constructive discharge.

---

discharge made by factfinders in arguably more egregious circumstances, or that we upheld summary judgment on, or dismissal of, employment discrimination claims does not establish any "floor" of intolerable circumstances below which this court may not go as a matter of law to uphold a jury verdict based on the individual circumstances of the instant case.

VSS correctly contends that this court has consistently declined to find sufficient evidence of age-based animus when the evidence of animus consists only of "stray remarks" regarding a worker's age. E.g., Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000) (internal quotation omitted). However, in Russell, this court recently refined the scope of its "stray remarks" doctrine in the context of reviewing a jury finding of age-based animus to ensure conformity with Supreme Court precedent regarding the proper standard of review applied to jury findings. See Russell, 235 F.3d at 225-29. In that case, this court held that, in light of the Supreme Court's holding in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151-54 (2000), "viewing remarks that a jury could find to evidence animus through [a] harsh lens ... [is] unacceptable" and that "all reasonable inferences" must be drawn in favor of a verdict for an employee. Russell, 235 F.3d at 226 (internal quotation omitted). This court further reiterated that "the potentially damning nature of ... age-related comments" cannot be discounted "on the ground that they were not made in the direct context" of an adverse employment decision. Id. (internal quotation omitted).

In this case, the jury heard testimony by Hooker's co-workers, Wofford and Russell, that Titman told them that Titman felt Hooker was too old to do her job and that Titman wished Hooker would resign. The jury also heard co-worker Jennifer

13

Walker testify that Titman asked Walker if she would be interested in a co-manager position and that Titman said that Hooker was "just too old and that [the supervisor] needed somebody younger to work" in the store. A fourth co-worker, Proctor, testified to the jury that Titman made comments about Hooker being too old to perform her job correctly "quite often," although not to Hooker's face. A fifth co-worker, Wiggins, testified that she was standing next to Titman when the supervisor received a phone call from Hooker relaying that Hooker would not be coming into work that day. Wiggins testified that Titman then told Wiggins that Hooker was "just too old to do the job", that "[Hooker] was tired all the time", and that the supervisor "needed someone younger that could keep up with the rigors of retail." Wiggins further testified that Titman would tell Wiggins that Hooker "needed to go ahead and retire; that she felt sorry for [Hooker]; and that she was a really nice person, but that it was just too much for her to handle at her age."

VSS contends that because these comments were not made to Hooker directly, nor made in Hooker's presence during any conduct giving rise to the constructive discharge, and because the comments were made to employees that did not work every shift with Hooker and Titman, such remarks are insufficient to support the jury's verdict finding age-based animus. However, a reasonable jury could have found that the supervisor's repeated remarks to multiple workers regarding Hooker's age and Titman's

14

desire that Hooker not work for VSS indicated an age-related motivation for Titman's criticism and harsh treatment of Hooker. This court cannot say that the jury lacked sufficient evidence to find the constructive discharge was age-based merely because such age-related comments were not made to Hooker's face, nor in her presence. The jury finding of age-based animus is therefore affirmed.

### D. *Mitigation of Damages*

VSS contends that Hooker failed to mitigate her damages and thus that the jury's award of back pay, as well as the liquidated damages assessed by the district court, must be vacated. Hooker contends that the district court erred in failing to award her front pay because the evidence in the record shows that she mitigated her damages. The jury awarded Hooker $46,655.05 in back pay and found that VSS had wilfully violated the ADEA. The district court, in denying VSS's motions to alter or amend the judgment and for new trial, held that the jury's back pay award was not excessive. The court then granted Hooker's motion for liquidated damages based on the jury's finding of a willful violation and assessed $46,655.05 in damages, an amount equal to the back pay award.

The factfinder, in this case the jury, may reduce the back pay damage award if an employee fails to mitigate her damages by reasonable efforts to obtain substantially similar employment

15

after termination.  See, e.g., Boehms v. Crowell, 139 F.3d 452, 460 (5th Cir. 1998), aff'd, 234 F.3d 30 (5th Cir. 2000).  If the defendant "proves that other employment was available and not diligently sought, there can be no award of back pay."  Hill v. City of Pontotoc, Mississippi, 993 F.2d 422, 426 (5th Cir. 1993) (citation omitted).  In the event the factfinder concludes that a willful violation of the ADEA occurred, an employee is entitled to liquidated damages not to exceed the back pay damage award.  Smith v. Berry Co., 165 F.3d 390, 395 (5th Cir. 1999) (citing 29 U.S.C. § 626(b) (1994)).  The jury's finding that an employee mitigated damages and its damage award are findings of fact thus reviewed for sufficiency of the evidence.  See Normand v. Research Inst. of America, Inc., 927 F.2d 857, 864-65 (5th Cir. 1991) (applying sufficiency of evidence standard to reinstate jury verdict finding mitigation).

In this case, Hooker presented evidence to the jury that after she left VSS's employ, she made several telephone calls to managers that she knew in the retail lingerie field to inquire if any managerial positions commensurate with her experience were available in the region, without success.  Hooker also testified that, because of her age and her experience at VSS, she felt that applying to jobs in person was not a good strategy and thus that she failed to fill out any job applications or to go on any interviews when her telephone inquiries proved unfruitful. The jury also heard testimony by a VSS district manager that

16

tends to show that employment was available to Hooker. The district manager testified that VSS employees were recruited frequently by other retailers in the Jackson, Mississippi area, that the manager felt it would be "easy" for a VSS manager to obtain such employment, and that in fact, at least two managers at a VSS location in Jackson were recruited away by other retailers. The jury weighed all of this evidence and concluded that Hooker mitigated her damages sufficiently to entitle her to back pay in the amount of $46,655.05. This court cannot say that, given Hooker's age and experience within the limited sphere of lingerie sales, a reasonable jury could not conclude that Hooker searched reasonably diligently under the circumstances to mitigate her back pay damages. The jury award of back pay damages is therefore affirmed.

VSS contends that because the district court made its own finding of fact that Hooker did not sufficiently mitigate damages to entitle her to <u>front pay</u> relief, the court erred in declining to reduce the back pay damage award as well. The district court's denial of VSS motions to alter or amend the judgment or for new trial, in which the court denied VSS's request for reduced back pay, as well as the court's denial of front pay damages to Hooker, are reviewed for abuse of discretion. <u>See</u> <u>Stephens v. C.I.T. Group/Equip. Fin., Inc.</u>, 955 F.2d 1023, 1028 (5th Cir. 1992) (reviewing denial of a motion for new trial

17

requesting reduced back pay for abuse of discretion); <u>Giles v. General Elec. Co.</u>, 245 F.3d 474, 490 (5th Cir. 2001) (front pay).

This court has recently held that a factfinder's determination that an employee failed to mitigate damages so that she is not entitled to back pay does not compel the same finding on the issue of mitigation for the purposes of determining entitlement to front pay relief. <u>See</u> <u>Giles</u> 245 F.3d at 489-90 (finding that court did not abuse its discretion in granting front pay award where, as the factfinder, the court found a failure to mitigate damages for the purposes of back pay relief and denied back pay damages). The <u>Giles</u> decision recognizes that the employee's duty to mitigate serves different purposes for the separate determinations of entitlement to back pay relief versus front pay relief. <u>See</u> <u>id.</u> The <u>Giles</u> holding further establishes that a factfinder may properly make differing factual determinations as to whether an employee sufficiently mitigated her damages for front pay versus back pay purposes based on the same evidence of mitigation. <u>See</u> <u>id.</u> Thus, under <u>Giles</u>, the district court in the instant case was entitled to make its own factual determination regarding whether Hooker sufficiently mitigated damages to entitle her to prospective relief entirely separate from the jury finding of mitigation related to past damages. The district court's finding that mitigation was not established for front pay purposes is not inconsistent with the jury finding of mitigation for back pay purposes and does not,

18

therefore, compel this court to hold that the district court abused its discretion.  Consequently, both VSS's and Hooker's motions to vacate the district court's rulings on back pay and front pay damages are denied.  The back pay and liquidated damages awards totaling $93,310.10 are affirmed.[5]

### *E. Motions to Alter or Amend the Judgment and for New Trial*

VSS contends that the district court erred in denying its motions to alter or amend the verdict and for new trial under FRCP 59(a) and (e).  Because this court finds that there is sufficient evidence to support the jury's finding that VSS violated the ADEA and that Hooker mitigated damages sufficiently to entitle her to back pay, the court finds that the district court did not abuse its discretion in denying those motions.  The district court's denial of VSS's two FRCP 59 motions is therefore affirmed.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Hooker contends that the district court erred in granting judgment as a matter of law to VSS pursuant to FRCP 50(a) on her state law claim for intentional infliction of emotional distress. Hooker further contends that the district court erred in denying

---

[5]  VSS does not contest the jury's finding of a willful violation, but contends only that where any reduction is made to the back pay award, the liquidated damages award must be reduced to no more than an equal amount.  Because we uphold the ADEA violation and the back pay award, the equal liquidated damages award remains undisturbed by this court.

her motion for a new trial pursuant to FRCP 59(a) on the same claim. We review the district court's grant of judgment as a matter of law under Rule 50(a) de novo and use the same evidentiary standard applied by the district court. Haun, 81 F.3d at 548. Judgment as a matter of law is inappropriate if substantial evidence in the record indicates that reasonable jurors could arrive at a contrary verdict. See id. (internal quotation omitted). We review denial of a motion for new trial for abuse of discretion; such review is "quite limited", and a new trial will only be granted if "prejudicial error has crept into the record" or "substantial justice has not been done." Streber v. Hunter, 221 F.3d 701, 736 (5th Cir. 2000) (internal quotation and citation omitted).

In order to establish a claim of intentional infliction of emotional distress under Mississippi law, a plaintiff must establish two elements: (1) conduct on the part of the defendant that is so extreme or outrageous as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"; and (2) severe emotional distress. Haun, 81 F.3d at 548 (internal quotation and emphasis omitted). For a plaintiff to establish the outrageous conduct element, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or ... [with] malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Id. (internal

20

quotations omitted). Moreover, this court has held that conduct creating constructive discharge of an employee, as deplorable as such conduct sometimes may be, is not the sort of behavior or treatment that rises to the level of outrageousness sufficient to support an emotional distress claim except in "the most unusual cases." Wilson v. Monarch Paper Co, 939 F.2d 1138, 1143 (5th Cir. 1991) (applying Texas law, which applies similar standards as Mississippi to emotional distress claims).

In Haun, for example, this court was confronted with circumstances analogous to the instant case. In that case, this court declined to overturn a jury verdict finding a willful ADEA violation, but affirmed the district court's grant of judgment as a matter of law to the employer on an emotional distress claim where both claims arose from the same conduct on the part of the employer. See 81 F.3d at 548-49 (applying Mississippi law). In so doing, we noted that conduct sufficient to sustain a claim of constructive discharge and employment discrimination -- including that the employer lied to the employee about the employee's probationary status, that it waited three months to inform the employee he was on probation, and that it failed to remove the employee from probation -- was certainly "not praiseworthy" and "might even rise to the level of wrongful." Id. at 549. Nevertheless, this court concluded that such conduct failed to meet the high threshold for an emotional distress claim because

the employer's conduct did not "go beyond all possible bounds of decency."  Id. at 549 (internal quotation omitted).

Similarly in Jenkins v. City of Grenada, 813 F. Supp. 443, 447 (N.D. Miss. 1993), a district court applying Mississippi law granted summary judgment to an employer on an emotional distress claim based on a pattern of discriminatory and harassing conduct toward an employee of a similar, or arguably even more egregious, nature to that suffered by Hooker.  In that case, the conduct suffered by the employee included unfair criticism of job performance, poor evaluations, and demands that the employee quit or face the threat of the employer fabricating justifications for termination.  This court held that such conduct could "sound[] in Title VII", but that it failed to sustain a claim of emotional distress under Mississippi law.  Id. at 447 (relying on Monarch, 939 F.2d at 1143).  Likewise in the instant case, although the conduct suffered by Hooker may be deplorable and sustains a jury verdict for her regarding employment discrimination, it is not, without more, so unusual that such conduct is sufficiently outrageous to sustain a claim for intentional infliction of emotional distress under Mississippi law.[6]  Because Hooker fails

---

[6]  Because we find that Hooker failed to establish the outrageous conduct element necessary to her claim, we find it unnecessary to address in detail Hooker's arguments that she suffered sufficient emotional distress to establish the second element of her claim.  We note, however, that the district court was correct in determining that Hooker's claim fails based on either element.

22

to establish a substantial conflict in the evidence regarding the outrageous conduct element of her emotional distress claim, the district court did not err in granting judgment as a matter of law to VSS on that claim.  Likewise, because there does not appear to be prejudicial error, nor was substantial injustice done, this court cannot say that the district court abused its discretion in failing to grant a new trial under FRCP 59(a) on the emotional distress claim.  Both the judgment as a matter of law for VSS and denial of Hooker's motion for a new trial on the emotional distress claim are therefore affirmed.[7]

## IV. ATTORNEY'S FEES

We review a district court's award of attorney's fees for abuse of discretion and have set forth twelve factors considered relevant to a proper determination of reasonable fees.  Giles, 245 F.3d at 490 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).  In exercising its discretion

---

[7]  Hooker further argues that because the district court denied summary judgment to VSS on the emotional distress claim based on affidavits of witnesses that included substantially the same evidence established at trial regarding the outrageous and distressing nature of VSS's conduct, this court is compelled to find that the district court erred in granting judgment as a matter of law to VSS.  However, Hooker's argument merely points out that the district court may have erred in failing to grant summary judgment to VSS.  It does not establish that the district court, with full benefit of hearing all the evidence presented at trial, could not have found the evidence insufficient to sustain the claim.  The district court's denial of summary judgment is not before this court, and this court's de novo review of the record indicates that there is insufficient evidence of outrageous conduct in the record as a whole to support the emotional distress claim under Mississippi law.

23

properly, a district court need not "meticulously" address all twelve factors, but must "heed the twelve-factor analysis." Id. at 490 (internal quotation omitted). Hooker claims that the district court erred by reducing her request for attorney's fees without adequate explanation.

However, a review of the district court's assessment of attorney's fees as set forth in its Opinion and Order of December 4, 2000, indicates that the court gave more than adequate consideration to the reasonableness of Hooker's fee request and properly heeded the twelve-factor analysis when it reduced the fees. The district court expressly noted the Johnson twelve-factor test. The court then assessed the rates of Hooker's three attorneys based on their respective years of experience and reduced one attorney's hourly rate from $175 to $155 because the court determined that the $175 rate was excessive, even for an attorney with twenty-eight years experience. As appropriate under the twelve-factor test, the district judge used his own experience of the time necessary to complete similar tasks to find that the 734 hours of attorney labor claimed from the filing of the complaint through the close of post-trial motions was "excessive." The court then reduced the total compensable hours by two-thirds. The court thus reduced the total fees from Hooker's request of $104.137.04 to $33,719.60. The court further reduced claimed expenses by $5,302.43 to $3,734.60 where it found that a $7,302.43 charge for outside copying was excessive without

24

further justification.  Given the district court's due consideration of the Johnson factors, the court did not abuse its discretion by reducing the fees and expenses from the amounts requested by Hooker.  The award of attorney's fees is therefore affirmed.

## V. CONCLUSION

For the foregoing reasons, the jury findings in favor of Hooker on her ADEA claim are AFFIRMED.  The district court's denial of VSS's motions for judgment as a matter of law on the ADEA claim is AFFIRMED.  The district court's denial of VSS's motions to alter or amend the judgment and for new trial is AFFIRMED.  The jury award of back pay, as well as the district court's denial of front pay damages, are AFFIRMED.  The district court's grant of judgment as a matter of law for VSS on the claim of intentional infliction of emotional distress is AFFIRMED.  The district court's denial of Hooker's motion for a new trial on the emotional distress claim is AFFIRMED.